

<table>
<tr><td>Attorneys admitted in California, New York, Texas, Pennsylvania, and Maine

Sender's contact:
stephen@donigerlawfirm.com
(310) 590-1820</td><td></td><td>Doniger / Burroughs Building
603 Rose Avenue
Venice, California 90291

Doniger / Burroughs NY
247 Water Street, First Floor
New York, New York 10038</td></tr>
</table>

June 15, 2023

**DELIVERED VIA ECF**
Honorable Valerie E. Caproni
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 443
New York, NY 10007-1312

**Re:**   *August Image, LLC and Mark Seliger v. Girard Entertainment & Media LLC, et al.,*
23-cv-1492(VEC); Joint Letter in advance of the June 23, 2023 IPTC

Your Honor:

Pursuant to this Court's June 8, 2023 Notice of Initial Pretrial Conference (Docket 22), Plaintiffs August Image, LLC and Mark Seliger (collectively "Plaintiffs") and Defendants Girard Entertainment & Media LLC and Keith Girard (collectively, "Girard") submit this joint letter.

### I.  A Brief Description of the Case from Each Side's Perspective:

***Plaintiffs' perspective*:** This Action was filed by Plaintiffs to seek compensation for the unauthorized use of a photograph of the cast of the television show "Friends" ("Subject Photograph") by Girard. The Subject Photograph was taken by Mr. Seliger, a highly accomplished professional photographer.[a]  August Image LLC is his exclusive licensing and syndication agent with respect to the Subject Photograph and therefore has standing to pursue infringement claims regarding that image. See, e.g., *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262 (S.D.N.Y. 2014), aff'd, 882 F.3d 394 (2d Cir. 2018). However, because one of Girard's regular defenses when sued for copyright infringement is to argue that the exclusive agent lacks standing, Mr. Seliger was joined as a plaintiff as well. Of course, each Plaintiff has different exclusive rights in the bundle of copyright rights to enforce.

Unfortunately, there has been a significant history of prior litigation between August and Girard. Keith Girard, owner of Girard, has also run other sites including The Improper (www.theimproper.com) and The NY Independent (www.thenyindependent.com), and between those sites August has found hundreds of photographs

---

[a] From 1992 to 2002, he was Chief Photographer for Rolling Stone, during which time he shot over 188 covers for the magazine. From 2002 to 2012 he was under contract with Condé Nast Publications for GQ and Vanity Fair and has shot for numerous other magazines. Seliger has published a number of books, and his photographs are included in the permanent collections of the National Portrait Gallery at the Smithsonian Institution, the Museum of Fine Arts in Houston, and the National Portrait Gallery in London. He has done advertising work for Adidas, Amazon, Anheuser-Busch, Apple, Dom Pérignon, Fila, Gap, HBO, Hourglass Cosmetics, Hulu, KITH, Lee Jeans, Levi's, McDonald's, Netflix, Ralph Lauren, Ray-Ban, Rolex, Showtime, Sony, Universal and Viacom, among others.

that it syndicates used without proper license. Indeed, currently pending in this Court is another case also styled *August v. Girard* (Case 21-cv-9397) which concerns the unauthorized use of 151 other photographs.[b] August would have added the Subject Photograph into that action, but it was quickly approaching 3-years from when that image was first infringed by Girard and it did not appear August would be able to amend that complaint prior to that date.[c] This case therefore only concerns a single image.

When August first brought this claim to the attention of Girard, its counsel responded by threatening August with Rule 11 sanctions, claiming without explanation that the claim was frivolous. Only after this case was filed did Girard provide an email between it and a third party which purportedly licensed the Subject Photograph to Girard. But that third party, Bang Showbiz out of London, never had any rights to use or license the Subject Photograph. Pursuant to this Court's Order that the parties mediate, Plaintiffs have provided evidence of all licensed uses of the Subject Photograph.

It is unfortunate this case had to be filed. Plaintiffs remain hopeful it can be resolved without having to waste more time of the Court and Parties than necessary, but such resolution has proven elusive because Girard and its counsel imagine that this case is some kind of shakedown and cling to a false narrative regarding prior litigation where Girard settled other claims against it.

***Defendant's perspective***: August Image and other agencies are in the business of filing frivolous lawsuits over uses that relate to what the industry calls "earned media," a category that their clients do not retain and that these agencies *know* they do not retain.  As they have done with Girard, they file voluminous lawsuits, rife with slanderous statements about parties who have obtained licenses from publicists to use images, and then when pressured to turn over documents that they know reveal that their claims are meritless, dismiss large percentages of their claims (as they have in the case pending against Girard before Judge Ramos, where August Image has dismissed with prejudice 95% of the images) or drop their settlement demands by 80% or more within a span of days. These agencies, who seek to undo the clients' agreements that give up editorial publicity uses, have done this four times against Girard, damaging his reputation in the process, and knowing none of the cases has merit.

This action is no different. With scant warning and without response to Girard's questions, the two Plaintiffs filed this Action against a party that had secured a license to use the Photograph. The Photograph is a publicity still, commissioned by *Rolling Stone* magazine, in the mid-1990s, and registered by Seliger a curious 25 years later. *Rolling Stone* appears to have retained rights for publicity purposes, including, evidently, for syndication to other entities for editorial (i.e., non-commercial) purposes like the use at issue here. Girard obtained a license from an entity in the UK, called Bang Showbiz,[d] to use the image for editorial purposes. The image was posted on Girard's site three years to the date prior to the filing of the Complaint (which the plaintiffs promptly amended). Plaintiffs contend that one or both of them (it remains unclear which) maintain

---

[b] For various reasons unrelated to the merits of the infringement claims, including the lack of timely registration for many images and the effect of the Second Circuit's holding in *Sohm v. Scholastic, Inc.*, 959 F.3d 39 (2d Cir. 2020), August decided to simplify the case before discovery began and moved Judge Ramos for leave to file a Third Amended Complaint removing many of those images. That motion was filed in February and is still pending.

[c] In June of 2022 Girard filed a motion to dismiss the Second Amended Complaint in Case 21-cv-9397. That motion was fully briefed and submitted by July of 2022. By February of this year, when August sought leave to file a Third Amended Complaint, Judge Ramos had not ruled on that motion to dismiss.

[d] Bang Showbiz includes among its clients Tribune Media, Reuters, and other well-known customers. Well-known stock photography company, Alamy, also has the image available for license for website use for $49.99.

standing and did not provide permission, to the extent they retained such rights, to grant the rights necessary for Bang Showbiz to license the image to Girard.

Upon the filing of this Action, on February 23, 2023, the Court ordered Plaintiffs to produce within 14 days of service: copies of records sufficient to show the *royalty paid* the last three times the Photograph was licensed, as well as the number of times it was licensed in the past five years. On March 9, Plaintiffs produced four purported license agreements (two for editorial uses and two for commercial uses), which appeared to be simple offers or otherwise incomplete. Girard requested repeatedly that Plaintiffs confirm that these were paid licenses and requested documentation that the payment amounts were actually rendered, but Plaintiffs declined even though August Image had admitted to Girard that it required clearance from the *Friends* cast in order to license. Following preparation and submission of mediation statements, a mediation was held on June 6, 2023. Then, *a week after the mediation*, on the afternoon of June 13, Plaintiff's counsel casually mentioned that he had neglected to provide the actual licenses, and that the documents provided were between Seliger and his agency Trunk Archive, which is not a party to this case. Plaintiffs provided two of the licenses, not the four that Seliger purportedly obtained, seemingly admitting that the commercial licenses were never consummated even though the uses referenced therein were in fact made. Further, even just the admission of June 13 confirms that Trunk Archive, *not* August Image, was Seliger's licensing agent at the relevant time.[e]

Putting aside the clear and inexcusable violation of the Court's February 23 Order, which resulted in a mediation during which Plaintiffs proffered false information, other issues remain. First, it is unclear who has standing to sue, and Plaintiffs' reliance on a misreading of *DRK Photo* makes no difference. Plaintiffs are correct that the unjustified pursuit of Girard has been dogged. In another case against Girard, in which plaintiff August Image waited until the passage of five to over *nine* years after Girard's use of certain images that were provided by magazines for Girard's use in the pursuit of what is referred to in the entertainment industry as earned publicity,[f] the court is considering whether August Image's attempt to amend the complaint a third time (including to remove 143 of 151 images from the case) may be futile on the grounds of lack of standing as well as the statute of limitations. Indeed, the Doniger firm's relentless pursuit of Girard has resulted in the disclosure that the corporate entities do not own the rights or the photographers themselves do not.[g] Second, it seems that even Seliger may not own the rights that are required for purposes of licensing. Third, it appears that dozens of parties used the Photograph via licenses from the *Friends* production studio, confirming neither Plaintiffs nor third party Trunk Archive has standing.

Plaintiffs' claim that Girard somehow did something wrong at the early stages is meritless, but it is yet more hyperbolic and concocted rhetoric that they hope will cover the truth. In fact, the case comes out of August Image's request to amend its complaint in the case before Judge Ramos a third time, which included the dismissal of 143 images *not* on the ground of *Sohm* as Plaintiffs allege for the first time here, but based on some vaguely-referenced purported issue with registration timing. When Girard noted that adding the Seliger

---

[e] The licensing agency relationship is insufficient for standing, as noted herein.

[f] This behavior reflects abuse of the "discovery rule," which presently allows a plaintiff to put off the effect of the statute of limitations by claiming it could not have discovered the use earlier. Plaintiffs are aware that license records for use are not retained for more than a few months or years at most, so it behooves them to wait given the elimination of the defense of laches in copyright cases.

[g] Tellingly, after another Doniger-represented party was required to disclose the agreements pertaining to the images in another case against Girard, and as a result it was clear that the allegations in the complaint were false, the firm promptly resolved the case on favorable terms for Girard. The firm has since preferred to abandon cases when challenged on standing. *See Creative Photographers, Inc. v. Julie Torres Art, LLC*, 2023 WL 2482962, at *1 (N.D. Ga. Mar. 13, 2023), and No. 1:22-CV-00655, Dkt. No. 44 (N.D. Ga. Mar. 26, 2023).

15528662.5

photograph would create an issue because Seliger's repeated presence in this District indicates that he is the party with standing, August Image declined to respond with substance. Instead, without advising that the statute of limitations was running, August Image and Seliger filed a *different* iteration of the proposed Third Amended Complaint, which Girard had not seen, and then filed this separate Action. At every turn, and with factitious claims, Plaintiffs' counsel has aggressively and uncivilly attacked Girard's counsel for having the "audacity" to seek to put an end to the repeated abuse of her client and of the availability of a judicial system where corporate clients must incur the cost of counsel.

## II.   Contemplated Motions

Plaintiffs contemplates filing a motion for summary judgment to establish liability if the case cannot be amicably resolved.

Defendants' time to respond to the current iteration of the Complaint is July 7. However, they are considering potential motions on standing, innocent intent, and damages at either the pleading stage or later stages. In addition, Girard may implead Bang Showbiz, who may document the license back to the rightful party with the standing to provide the license to Bang Showbiz and on to Girard, eliminating liability.

## III.   Subject Matter Jurisdiction

Subject matter jurisdiction exists because this is a copyright claim subject to exclusive federal jurisdiction.

## IV.   The Prospects for Settlement

The parties held an early mediation and have continued settlement negotiations since. Plaintiff's last demand to resolve this case was a mere $2,000 inclusive of costs of suit incurred, but Defendant will not offer more than three figures. This is a case that should be settled, but prospects for settlement unfortunately do not seem strong because Defendants imagine that a request for reasonable compensation is some kind of shakedown.

Despite already having licensed the Photograph from a party with the appearance of authority, Girard has offered more to resolve the matter than what Plaintiffs have contended is the highest applicable editorial price of $505, and higher than what Plaintiffs could reasonably receive at trial under these facts. Girard has moved multiple times. Plaintiffs, on the other hand, tripled their prior demand for the mediation, only to then cut their demand shortly afterward and then drop it almost daily; yet they still continue to demand a price that Plaintiffs have been unable to justify given the licensing prices, the risk that the Court will find that Bang Showbiz properly derived their rights from *Rolling Stone*'s retention of publicity uses, and that Section 504(c)(2) of the Copyright Act holds that in a case of innocent infringement, the court may reduce any statutory damage award to a sum of not less than $200. If the case has not resolved, it is due to the only argument Plaintiffs have been able to proffer: that it costs less to settle than to fight. Although Plaintiffs have amply demonstrated their belief that they are entitled to a payout for any lawsuit they file, Girard has every reason to make the decision to seek a dismissal and clear their good name rather than bend to Plaintiffs' rampant use of the court system to extract repeated cost-of-litigation settlements against a small business that has followed the licensing rules.

## V.   Whether the Parties Believe a Rule 16 Conference would be helpful

Plaintiffs do not believe that a Rule 16 conference would be particularly helpful. This is not a complicated case that will require anything unusual, and the Parties can submit a proposed Case Management Plan that can be Ordered. Perhaps in an effort to dissuade August from pursuing future infringement claims against Girard, a serial infringer, it seemingly wants to make this case as difficult and expensive as possible. Respectfully, this Court should advise Girard that fully ventilating the merits of the case does not require the attacks, vitriol and litigation inefficiencies it has thus far employed and insisted on.

Defendants believe that a Rule 16 conference would be quite helpful under the circumstances described above. Already in this young case, there have been rules violations, double-speak, incivility, *ad hominem* attacks, and unusual approaches to negotiation. The Court may be able to help it stop. Further, because this image was licensed from a reputable supplier, the parties would benefit from the Court's views on the modification or staging of particular types of discovery, and a potentially expedited schedule. Even in the proposed scheduling discussions, Plaintiffs had proposed extending the deadlines beyond the limits and setting the final conference for over a year from now, evidently believing that Girard will just pay up again to resolve another meritless claim. An open discussion, with counsel present before Your Honor, may shake out some of the disconnects present, including the serious issues pertaining to the required disclosures in this Action, and reduce what has been a demonstrably unnecessarily uncooperative and rancorous approach from counsel.

Further, Plaintiffs should be held to their obligations rather than continue to use excuses to get out of obligations, such as court appearances, that they find inconvenient. For instance, four business days before the mediation, Seliger sought to send a representative to the mediation on his behalf, well after confirming his availability at the date and time agreed (and making no mention of any time zone constraints), because he had a work assignment he wanted to take instead. While counsel accused Girard's counsel of "creating drama just to create drama" when she objected to this sudden change of plans, the mediator agreed firmly with Girard's counsel and instructed Seliger to appear. Plaintiffs then failed to move off of their opening offer (which was three times higher than the allocable amount from a prior offer), forcing the mediation to end quickly and presumably freeing up Seliger for the job he wanted. While counsel understandably wants to get away with disrespecting the Court and its processes by trying to get a settlement without the other conditions that Girard would insist upon (such as a full release from both Plaintiffs as to all known and unknown claims), it is Girard's position that some Court oversight at the start will help curtail the gamesmanship that has already run rampant in this case in which a responsive pleading has not yet been filed. Girard looks forward to appearing before Your Honor shortly.

Plaintiffs feel it important to note in this letter that they strongly disputes Girard's mischaracterizations of the record, including but not limited to in the preceding paragraphs, but do not think it an appropriate use of this Court's time to respond to Ms. Lackman's mudslinging. They do note, however, that the mediator advised the parties prior to the mediation that "each party must have a business representative present at the Zoom mediation, other than litigation counsel," so Mr. Seliger planned to have a business manager attend. But when the mediator clarified that Mr. Seliger should be present in person he made himself available for the Zoom mediation despite being on assignment in the UAE. Second, prior to the mediation Plaintiff reduced its demand to move the case towards settlement, but in response to that reduced demand Defendants refused to increase their offer. Plaintiff did subsequently reduce its demand but initially stated, correctly, that the ball was in Defendants' court. At all relevant times Plaintiffs have acted, and will continue to act, without gamesmanship and with due regard to their obligations. If this case cannot be resolved it is prepared to accept the dates set by this Court and reiterates that Ms. Lackman's apparent desire to make this case more rancorous than necessary does not justify the parties or the Court's time for an in-person appearance in a case in which Plaintiff is only demanding $2,000.

15528662.5

        Respectfully submitted,

By: */s/ Stephen Doniger*
   Scott Alan Burroughs, Esq.
   Stephen Doniger, Esq.
   DONIGER / BURROUGHS PC
   *Counsel for Plaintiffs*

By: *s/Eleanor M. Lackman*
   Eleanor M. Lackman
   MITCHELL SILBERBERG & KNUPP LLP
   *Counsel for Defendants*