```
                                                              USDC SDNY
                                                              DOCUMENT
UNITED STATES DISTRICT COURT                                  ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                                 DOC #:
-------------------------------------------------------------X DATE FILED: 04/01/2024
AUGUST IMAGE, LLC and MARK SELIGER,          :
                                             :
                              Plaintiffs,    :
          -against-                          :
                                             :                23-CV-1492 (VEC)
                                             :
GIRARD ENTERTAINMENT & MEDIA LLC             :                OPINION & ORDER
and KEITH GIRARD,                            :
                                             :
                                             :
                                             :
                              Defendants.    :
-------------------------------------------------------------X
```

VALERIE CAPRONI, United States District Judge:

Photographer Mark Seliger and his agency August Image, LLC, sued Defendants, who own and operate news sites, for an alleged copyright violation stemming from the publication of an article depicting an Instagram post that featured a photograph of the cast of Friends taken by Mr. Seliger. Am. Compl., Dkt. 11. On June 16, 2023, the Court ordered Plaintiffs' counsel to show cause why they should not be sanctioned for failing to comply with the Court's Mediation Referral Order. Order, Dkt. 25. On September 22, 2023, Defendants moved for judgment on the pleadings, and Plaintiffs opposed the motion. Defs. Mem., Dkt. 41; Pls. Opp., Dkt. 44. For the following reasons, the motion for judgment on the pleadings is GRANTED, the Court declines to impose sanctions, and the case is DISMISSED without leave to amend.

## BACKGROUND

As relevant to this motion, in 1995 Mr. Seliger took a photograph of the cast of Friends (the "Photograph") as part of an editorial photoshoot; the Photograph subsequently appeared on the cover of the May 1995 issue of *Rolling Stone Magazine*.[1] Am. Compl. ¶ 10. Mr. Seliger

---

[1] *See 1995 Rolling Stone Covers*, Rolling Stone (May 12, 2004), https://perma.cc/2C4K-4HZY.

1

owns the Photograph's copyright but contractually authorized August Image, LLC to sue for copyright infringement of the Photograph. *Id*. ¶¶ 10–11.

Defendants own and control the website thenyindependent.com (the "Website"). *Id*. ¶ 8. David Schwimmer, a cast member of Friends, used the Photograph in an Instagram Post (the "Post"). *Id*. ¶ 15. Defendants, in turn, used a screenshot of the Post to illustrate an article (the "Article") titled: "Can Friends Reboot Count on Aging Fans to Rekindle Love of TV Show?"[2] *See* Keith Girard, *Can Friends Reboot Count on Aging Fans to Rekindle Love of TV Show?*, N.Y. Indep. (Feb. 24, 2020), https://perma.cc/UG57-GDEL (hereinafter "Girard Article").[3] The caption of the screenshot was: "It's happening."[4] Am. Compl. ¶ 15. .



---

[2]     Although the Amended Complaint does not include a full copy of the allegedly infringing Article, it includes photos from and a link to the Article, which is the subject of the complaint. Am. Compl., Dkt. 11 ¶ 15. Accordingly, the Court finds that the Amended Complaint incorporates the Article by reference and considers the full Article for the purposes of deciding the motion for judgment on the pleading. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002).

[3]     Plaintiffs also include a link to a page of the New York Independent that ends in .jpg. Am. Compl. ¶ 15. That page appears to have since been removed from the Website. As Defendants explain, and Plaintiffs do not dispute, this second link does not represent a separate post of the Photograph but was instead an artifact of the code used to link to the Post. *See* Defs. Mem., Dkt. 34 at 4 n.3 (citing *Hunley v. Instagram, LLC*, 73 F.4th 1060, 1063–65 (9th Cir. 2023) (explaining process for embedding)).

[4]     As of this Opinion, the version of the Article available online appears without the Photograph. Defendants do not dispute that, as of the filing of the complaint, the Article depicted the Post, and therefore, the Photograph.

The Article stated, "Schwimmer, who played Ross, confirmed in an Instagram post that the cast had agreed on a 'Friends' special." *See* Girard Article.

On February 22, 2023, Plaintiffs sued for copyright infringement. Compl., Dkt. 1. On February 23, 2023, the Court referred the parties to mediation and ordered Plaintiffs to produce to Defendants in advance of mediation "copies of records sufficient to show the royalty paid the last three times the [Photograph] was licensed, as well as the number of times the picture was licensed in the last five years . . . ." Order, Dkt. 8 at 2. On February 24, 2023, Plaintiffs amended the complaint. Am. Compl., Dkt. 11.

On June 16, 2023, following a joint report form the parties in which Defendants stated that Plaintiffs' counsel had failed to comply with the terms of the mediation referral order, *see* Letter, Dkt. 23 at 3, the Court ordered Plaintiffs' counsel to show cause why they should not be sanctioned, Order, Dkt. 25. On August 25, 2023, the parties appeared before the Undersigned for an initial pretrial conference, at which the Court took under advisement the order to show cause why sanctions should not be imposed. Order, Dkt. 33.

## DISCUSSION

### I. The Motion for Judgment on the Pleadings Is Granted

#### A. Standard of Review

"Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (citation omitted). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citation omitted). The Court must "accept all factual

3

allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021) (cleaned up).  In adjudicating a Rule 12(c) motion, the court examines "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice." *L-7 Designs, Inc. v. Old Navy LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation omitted).

### B. Fair Use

Defendants argue that the Article's use of the Photograph constituted fair use.[5]  *See* Defs. Mem. at 15.  "The fair use doctrine is a statutory exception to copyright infringement." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006).  As codified in the Copyright Act, "the fair use of a copyrighted work . . . for purposes such as criticism, comment, [or] news reporting. . . is not an infringement of copyright."  17 U.S.C. § 107.  To determine whether a particular use is fair use, courts engage in a case-by-case evaluation using four statutory factors and considering the purposes of copyright.[6]  *Bill Graham*, 448 F.3d at 608.  Those factors are:

---

[5]    Defendants also argue that Plaintiffs fail adequately to plead that August Image, LLC has standing because it is only a licensing agent.  *See* Defs. Mem. at 10.  At this stage, the Court credits Plaintiffs' claim that Mr. Seliger retained ownership rights to the Photograph, which is sufficient to allege that he has standing to sue.  *See* Am. Compl. ¶ 10; *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 276 (S.D.N.Y. 2014) (noting that the Copyright Act authorizes "owners of copyrights" to sue under that statute).  Because the Court dismisses this case, and "at least some [plaintiffs] have Article III standing," that is enough "to satisfy Article III;" accordingly, the Court need not decide whether August Image, LLC, has standing.  *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2555 (2019).

[6]    Fair use is a "mixed question of law and fact," *Cariou v. Prince*, 714 F.3d 694, 704 (2d Cir. 2013), necessitating "an open-ended and context-sensitive inquiry," *id.* at 705.  For that reason, courts generally wait until the summary judgement phase to address fair use, but dismissal of a copyright infringement claim is warranted where fair use is clearly established on the face of the complaint.  *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016).  Cases such as this, in which transformativeness can be determined by doing a side-by-side comparison of the original work and the secondary use, are particularly appropriate for early disposition.  *Donald Graham v. Prince*, 265 F. Supp. 3d 366, 377 (S.D.N.Y. 2017) (describing transformativeness as whether "the allegedly offending use of the original work . . . alters the first work with new expression, meaning, or message" (cleaned up)).

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.  Although a court must weigh all the factors, the first — particularly whether the use is "transformative" — is most important and "has a significant impact on the remainder of the fair use inquiry." *Donald Graham v. Prince*, 265 F. Supp. 3d 366, 380 (S.D.N.Y. 2017).

### C. Application of Factors

#### 1. Purpose and Character of the Use

The purpose and character of the use sits at "[t]he heart of the fair use inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006).  It includes two considerations: "the transformative nature of the work," and whether the "use is of a commercial nature or is for nonprofit educational purposes." *Bill Graham*, 448 F.3d at 608 (quoting 17 U.S.C. § 107(1)).  "The more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).

##### (i) Transformative Use

The fair use doctrine "allows for new transformative works that further the public discourse and the free exchange of ideas in order to promote science and the arts." *Baraban v. Time Warner, Inc.*, 2000 WL 358375, at *2 (S.D.N.Y. Apr. 6, 2000) (citing *Campbell*, 510 U.S. at 579).  To determine whether the secondary use is transformative, "[t]he question is whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression,

meaning, or message." *Bill Graham*, 448 F.3d at 608 (quotation omitted); *see also Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015) ("[A] transformative use is one that communicates something new and different from the original or expands its utility, thus serving copyright's overall objective of contributing to public knowledge."). A secondary use "can be transformative in function or purpose without altering or actually adding to the original work." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014) (quotation omitted).

In cases involving news about celebrities, courts have held that publishing a copyrighted photograph included in a social media post is transformative when the purpose is to report or comment on the post, which is "itself the subject of the story." *Barcroft Media, Ltd. v. Coed Media Grp.*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) ("Display of a copyrighted image or video may be transformative where the use serves to illustrate . . . a news story *about* that work."); *see also Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 586 (S.D.N.Y. 2020) (same). Such inclusion is transformative because it goes beyond merely displaying the photograph "for the precise reason it was created." *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 407 (S.D.N.Y. 2016) (holding that a photograph of a celebrity could not be used solely to depict or report on that celebrity).

*Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570 (S.D.N.Y. 2020), considered the use of a copyrighted photograph of musician Cardi B taken at a Tom Ford Fashion Show. An online article about the collaboration between Tom Ford and Cardi B to sell lipstick used three Instagram posts as illustrations. *Id*. at 577. One of those posts showed the copyrighted photograph of Cardi B next to a photograph of Tom Ford lipstick under the headline: "Cardi B's Tom Ford Lipstick has already SOLD OUT!!!" *Id*. at 578. The Court held that use was

transformative; "Defendant published the Post, which incidentally contained the Photograph, because . . . the fact that Cardi B had disseminated the Post [] was the very thing the Article was reporting on." *Id*. at 582.

As in *Walsh*, the Article's focus was on the fact that Schwimmer's Instagram Post of the Photograph with the caption "It's happening[]" suggested that the popular sitcom would return; the inclusion of the Photograph was incidental. Am. Compl. ¶ 15. That purpose is wholly distinct from the purpose for which the Photograph was taken, which was to depict the cast of Friends. Although Plaintiffs argue that the Article never directly discussed the Photograph, *see* Pls. Opp. at 17, a secondary use need not "comment[] on the Photo *per se*" to be transformative. *Marano v. Met. Museum of Art*, 472 F. Supp. 3d 76, 85 (S.D.N.Y. 2020) (holding that inclusion of photograph in museum's online catalogue was fair use). What indicates a transformative use is that "no other image — not even the Photograph itself as a standalone image — would have fulfilled the same purpose as the Post itself." *Walsh*, 464 F. Supp. 3d at 583 (cleaned up).

Because the Article "communicates something new and different from the original," the Court finds that its use is transformative. *Authors Guild*, 804 F.3d at 214.

### (ii)   Commercial Nature

"The commercial/nonprofit dichotomy concerns the unfairness that arises when a secondary user makes unauthorized use of copyrighted material to capture significant revenues as a direct consequence of copying the original work." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 922 (2d Cir. 1994). But "because nearly all fair uses of copyrighted works are conducted for profit, the Second Circuit has cautioned that the more transformative the new work, the less will be the significance of the commercial sub-factor." *Donald Graham*, 265 F. Supp. 3d at 382 (cleaned up). Accordingly, the Second Circuit has "repeatedly rejected the

contention that commercial motivation should outweigh a convincing transformative purpose and absence of significant substitute competition with the original." *Authors Guild*, 804 F.3d at 219.

Plaintiffs allege, in a conclusory way, that Defendants used the Photograph "for commercial purposes in various ways . . . ." Am. Compl. ¶ 13.  Assuming that Defendants publish the Website, which bills itself as an online magazine,[7] for commercial purposes, that is of limited import; "almost all newspapers, books and magazines are published by commercial enterprises that seek a profit." *Swatch Grp.*, 756 F.3d at 83 (cleaned up) (holding publication of copyrighted financial information to Bloomberg's paying subscribers was transformative as news reporting).  The instant use of the Photograph in a single Article "is but one small part" of the online magazine.  *Id*.  Any indirect financial gain is outweighed by the public benefit in reporting on matters of public interest.  *See Am. Geophysical Union*, 60 F.3d at 922 (noting that courts are less likely to find unfair commercial exploitation where the secondary use "produces a value that benefits the broader public interest").

Accordingly, any commercial purpose is outweighed by the public benefit generated and the transformative nature of Defendants' use.  For those reasons, the first factor weighs heavily in favor of a finding of fair use.

### 2. Nature of the Copyrighted Work

The second fair use factor considers "(1) whether the work is expressive or creative with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." *Cariou v. Prince*, 714 F.3d 694, 709–10 (2d Cir. 2013 (cleaned up).

---

[7] *See About Us*, N.Y. Indep., available at https://perma.cc/V88J-95RV (last visited Mar. 13, 2024).

The Photograph is indisputably creative and had been published. *See Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996) ("[P]hotographic images of actual people, places and events may be as creative and deserving of protection as purely fanciful creations."). While ordinarily the creative nature of the Photograph would weigh in favor of the copyright holder, the Court affords this factor limited weight because of the secondary use's transformative purpose. *See Blanch*, 467 F.3d at 257 ("[T]he second factor may be of limited usefulness where the creative work of art is being used for a transformative purpose." (quotation omitted)); *see also Authors Guild*, 804 F.3d at 220 ("The second factor has rarely played a significant role in the determination of a fair use dispute.").

For all these reasons, the Court affords little weight to the second fair use factor, which weighs weakly against a finding of fair use.

### 3.  Amount and Substantiality of the Portion Used

The third fair use factor asks whether "the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586 (cleaned up). Although the Second Circuit has never "ruled that the copying of an entire work *favors* fair use," "such copying does not necessarily weigh against fair use because copying the entirety of a work is sometimes necessary to make a fair use of the image." *Bill Graham*, 448 F.3d at 613 (citing *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000)). Thus, "the third-factor inquiry must take into account that 'the extent of permissible copying varies with the purpose and character of the use.'" *Id.* (quoting *Campbell*, 510 U.S. at 586–87).

The Article displays the Photograph in its entirely because Schwimmer's Post included the entire Photograph. *See* Am. Compl. ¶ 15. Because the Article's purpose was to report on the

9

implications of the Post for a reunion the popular TV show's cast, "to copy any less would have made the picture useless to the story." *Nunez*, 235 F.3d at 24.

The third fair use factor is neutral.

### 4. Effect of the Use Upon the Market for or Value of the Original

The final fair use factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This analysis is concerned with "whether the secondary use usurps the market of the original work." *Blanch*, 467 F.3d at 258 (quotation omitted). It "focuses on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Authors Guild*, 804 F.3d at 223. The Supreme Court has "stressed the close linkage between the first and fourth factors, in that the more the copying is done to achieve a purpose that differs from the purpose of the original, the less likely it is that the copy will serve as a satisfactory substitute for the original." *Id*. (citing *Campbell*, 510 U.S. at 591).

Because "the Photograph did not appear on its own," but as part of the Instagram Post that was used to illustrate the Article, the Photograph is not in competition with the Article. *Clark v. Transp. Alternatives, Inc.*, 2019 WL 1448448, at *4 (S.D.N.Y. Mar. 18, 2019); *see also Walsh*, 464 F. Supp. 3d at 586 ("Here, because the Photograph did not appear on its own, but as part of the Post . . . it is implausible that Defendant's use would compete with Plaintiff's business or affect the market or value of her work."). In short, Plaintiffs do not plausibly allege that the secondary use "could, in any way, impair any other market for commercial use of the Photo, or diminish its value." *Marano v. Met. Museum of Art*, 844 F. App'x 436, 439 (2d Cir. 2021). Accordingly, this factor is neutral.

For all of these reasons, the Court finds that, as a matter of law, the balance of the factors necessitates a finding of fair use. Accordingly, the motion for judgment on the pleadings is granted.

The Court declines to grant leave to amend as Plaintiffs have not demonstrate that, if given the opportunity to amend, they would be able to allege sufficient facts to establish that the secondary use was not fair use; rather, they allege only, in a conclusory manner, that "Plaintiffs can certainly further amend their claims to include . . . any other matter the Court finds lacking . . . ." Pls. Opp. at 16; *see also Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86, 98 (2d Cir. 2019) (noting that, though courts should freely grant leave to amend, "a district court has discretion to deny it for . . . futility" (cleaned up)).

## II.   Plaintiffs' Counsel Will Not Be Sanctioned

Plaintiffs' counsel represent that their failure to comply with this Court's order to disclose "copies of records sufficient to show the royalty paid the last three times the picture that is at issue in this case was licensed," Order, Dkt. 8, was due at least in part to a gap in their client's records, Tr., Dkt. 37 at 6. The Court's order was quite clear, and counsel's efforts to comply were lackadaisical, at best. Counsel should have done a better job gathering the required information and, if their client's recordkeeping prevented compliance, they should have notified the Court and obtained either more time to gather the required materials or permission not to comply.

While the Court will not sanction Plaintiffs' counsel, David Jenkins, Stephen M. Doniger, and Scott Burroughs, or their law firm Doniger / Burroughs, counsel are admonished that the Court will not be so understanding in the future.

## CONCLUSION

For the foregoing reasons, the motion for judgment on the pleadings is GRANTED, the case is DISMISSED, and the Court declines to sanction Plaintiffs' counsel. The Clerk of Court is respectfully directed to terminate all open motions and to CLOSE the case.

**SO ORDERED.**

**Date: April 1, 2024**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**