UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AUGUST IMAGE, LLC and MARK
SELIGER,

               Plaintiffs,

     v.

GIRARD ENTERTAINMENT & MEDIA
LLC and KEITH GIRARD,

              Defendants.

Case No.    23-CV-1492 (VEC)


# DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR ATTORNEY'S FEES

MITCHELL SILBERBERG & KNUPP LLP

Eleanor M. Lackman (eml@msk.com)
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Defendants Girard Entertainment
& Media LLC and Keith Girard*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     GIRARD IS ENTITLED TO RECOVER HIS ATTORNEY'S FEES.............................................6

     A.     Standard for Award of Attorney's Fees Under the Copyright Act. ....................................6

     B.     Plaintiffs' Mischaracterized Positions and Pursuit of an Obvious Fair Use Was Objectively Unreasonable....................................................................................................9

     C.     Plaintiffs Were Motivated by Earning Money—and Further Intimidating Girard in the Other Pending Cases—Rather Than by a Legitimate Desire to Enforce Rights that They May Have Had. ................................................................................................................15

     D.     Girard Should be Compensated for Ensuring that Fair Use Principles Are Protected and Reinforced, and Plaintiffs Should be Deterred from Bringing Meritless Claims. ............18

II.     THE AMOUNT OF ATTORNEY'S FEES REQUESTED IS REASONABLE............................21

     A.     The Standard for Establishing a Presumptively Reasonable Fee......................................21

     B.     The Hourly Rates of Girard's Attorneys Are Reasonable. ..............................................22

     C.     The Number of Hours Expended by Girard's Attorneys Is Reasonable............................23

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*16 Casa Duse, LLC v. Merkin*,
   740 F. App'x 223 (2d Cir. 2018) .............................................................................8

*Amanze v. Adeyemi*,
   No. 18 Civ. 8808 (NRB), 2019 WL 2866071 (S.D.N.Y. July 3, 2019)...................14

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany*,
   522 F.3d 182 (2d Cir. 2008)..............................................................................21, 22

*August Image, LLC v. Girard Entertainment & Media, et ano.*,
   No. 21 Civ. -9397 (ER), ECF No. 33....................................................................10

*Baker v. Urb. Outfitters, Inc.*,
   431 F. Supp. 2d 351 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir. 2007)..........14, 16, 20

*Bell v. Carmen Com. Real Est. Servs.*,
   No. 1:16-cv-01174 (JRS) (MBP), 2020 WL 5016891 (S.D. Ind. Aug. 25, 2020)..................17

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*,
   529 F. Supp. 3d 605 (N.D. Tex. 2021), *aff'd*, 27 F.4th 313 (5th Cir. 2022)...........................18

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
   532 U.S. 598 (2001)...............................................................................................7

*Caner v. Autry*,
   No. 14-cv-00004, 2014 WL 2967607 (W.D. Va. July 1, 2014) .............................11

*Charles v. Seinfeld*,
   No. 18-cv-1196 (AJN), 2021 WL 761851 (S.D.N.Y. Feb. 26, 2021) .....................20

*Charles v. Seinfeld*,
   No. 18-cv-1196 (AJN), 2022 WL 889162 (S.D.N.Y. Mar. 25, 2022).....................22

*Chivalry Film Prods. v. NBC Universal, Inc.*,
   No. 05 Civ. 5627 (GEL), 2007 WL 4190793 (S.D.N.Y. Nov. 27, 2007)...........................7, 20

*Clarke v. Frank*,
   960 F.2d 1146 (2d Cir. 1992).............................................................................23, 24

*Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*,
   246 F.3d 142 (2d Cir. 2001)................................................................................8, 22

*Crown Awards, Inc. v. Disc. Trophy & Co.*,
   564 F. Supp. 2d 290 (S.D.N.Y. 2008), *aff'd*, 326 F. App'x 575 (2d Cir. 2009)...............19, 25

*Earth Flag Ltd. v. Alamo Flag Co.*,
    154 F. Supp. 2d 663 (S.D.N.Y. 2001) ...................................................................................19

*EMI Catalogue P'ship v. CBS/Fox Co.*,
    No. 86 Civ. 1149 (PKL), 1996 WL 280813 (S.D.N.Y. May 24, 1996) ....................................4

*Farrar v. Hobby*,
    506 U.S. 103 (1992) ...............................................................................................................25

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1984) .................................................................................................................7

*G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*,
    894 F. Supp. 2d 415 (S.D.N.Y. 2012) ....................................................................................24

*Galeana v. Lemongrass on Broadway Corp.*,
    120 F. Supp. 3d 306 (S.D.N.Y. 2014) ....................................................................................23

*Gierlinger v. Gleason*,
    160 F.3d 858 (2d Cir. 1998) ...................................................................................................22

*Harrell v. Van Der Plas*,
    No. 08 Civ. 8252 (GEL), 2009 WL 3756327 (S.D.N.Y. Nov. 9, 2009) ....................................6

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ...............................................................................................................25

*In re Stock Exchs. Options Trading Antitrust Litig.*,
    No. 99 Civ. 0962 (RCC), 2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ..................................22

*Kanongataa v. Am. Broad. Cos.*,
    No. 16-cv-7382 (LAK), 2017 WL 4776981 (S.D.N.Y. Oct. 4, 2017) .................................7, 24

*Keck v. Mix Creative Learning Ctr., LLC*,
    No. 4:21-CV-00430, 2023 WL 2652259 (S.D. Tex. Mar. 27, 2023) .......................................16

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    579 U.S. 197 (2016) ..........................................................................................6, 8, 18, 19, 20

*Konangataa v. Am. Broad. Coo.*,
    No. 16-cv-7382 (LAK), 2017 WL 2684067 (S.D.N.Y. June 21, 2017) ............................11, 24

*Lee v. Karaoke City*,
    18 Civ. 3895 (PAE), 2020 WL 5105176 (S.D.N.Y. Aug. 31, 2020) .......................................12

*Mahan v. Roc Nation, LLC*,
    No. 14 Civ. 5075 (LGS), 2015 WL 4388885 (S.D.N.Y. July 17, 2015), *aff'd*, 634 F.
    App'x 329 (2d Cir. 2016) .........................................................................................................7

*Marano v. Metro. Museum of Art*,
  844 F. App'x 436 (2d Cir. 2021) ...................................................................................11, 13

*Melodrama Publ'g, LLC v. Santiago*,
  No. 12 Civ. 7380 (JSR) (FM), 2015 WL 2380521 (S.D.N.Y. May 19, 2015) .......................24

*Millea v. Metro-North R.R. Co.*,
  658 F.3d 154 (2d Cir. 2011)..................................................................................................21

*Otto v. Hearst Commc'ns, Inc.*,
  1:17-cv-4712 (GHW) (S.D.N.Y. Jan. 23, 2020) ....................................................................4

*Porto v. Guirgis*,
  659 F. Supp. 2d 597 (S.D.N.Y. 2009)..................................................................................7, 9

*Protoons Inc. v. Reach Music Publ'g, Inc.*,
  No. 09 Civ. 5580 (KBF), 2016 WL 680543 (S.D.N.Y. Feb. 19, 2016), *aff'd*, 718 F.
  App'x 8 (2d Cir. 2017)............................................................................................................7

*Pyatt v. Raymond*,
  No. 10 Civ. 8764 (CM), 2012 WL 1668248 (S.D.N.Y. May 10, 2012)............................7, 24

*Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*,
  No. 13 Civ. 2493 (KBF), 2014 WL 4792082 (S.D.N.Y. Sept. 24, 2014) ........................23, 24

*Reiter v. Metro. Transp. Auth. of State of NY*,
  No. 01 Civ. 2762 (GWG), 2007 WL 2775144 (S.D.N.Y. Sept. 25, 2007)............................23

*Righthaven LLC v. Hoehn*,
  716 F.3d 1166 (9th Cir. 2013) ................................................................................................3

*Rock v. Enfants Riches Deprimes, LLC*,
  No. 17-cv-2618 (ALC), 2020 WL 468904 (S.D.N.Y. Jan. 29, 2020) ....................................22

*Rodriguez v. Klum*,
  No. 05-CV-10218 (LAP), 2009 WL 73115 (S.D.N.Y. Jan. 8, 2009) ....................................19

*Sands v. Bauer Media Grp. USA, LLC*,
  No. 17-cv-9215 (LAK), 2019 WL 4464672 (S.D.N.Y Sept. 18, 2019) ...........................17, 18

*Screenlife Establishment v. Tower Video, Inc.*,
  868 F. Supp. 47 (S.D.N.Y. 1994) ...........................................................................................8

*Simmons v. N.Y.C. Transit Auth.*,
  575 F.3d 170 (2d Cir. 2009)..................................................................................................21

*SOFA Ent., Inc. v. Dodger Prods., Inc.*,
  709 F.3d 1273 (9th Cir. 2013) ..........................................................................................11, 18

*TCA Television Corp. v. McCollum,*
    No. 15 Civ. 4325 (GBD)(JCF), 2018 WL 2932724 (S.D.N.Y. June 12, 2018)......................20

*Torah Soft Ltd. v. Drosnin,*
    No. 00-cv-5650-JCF, 2001 WL 1506013 (S.D.N.Y. Nov. 27, 2001)......................................15

*TufAmerica Inc. v. Diamond,*
    No. 12-CV-3529 (AJN), 2018 WL 401510 (S.D.N.Y. Jan. 12, 2018) ..............................7, 25

*Video-Cinema Films, Inc. v. Cable Network, Inc.,*
    No. 98 Civ. 7125(BSJ), 2003 WL 1701904 (S.D.N.Y. Mar. 31, 2003) ...........................16, 17

*Viva Video, Inc. v. Cabrera,*
    9 F. App'x 77 (2d Cir. 2001) ...........................................................................................9

*Walsh v. Townsquare Media, Inc.,*
    464 F. Supp. 3d 570 (S.D.N.Y. 2020)............................................................................11, 12

*Walsh v. Townsquare Media, Inc.,*
    No. 19-cv-4958 (VSB), 2022 WL 1302216 (S.D.N.Y. May 2, 2022)..............................14, 16

## STATUTES

17 U.S.C.
    § 107......................................................................................................1, 5, 7, 13, 18
    § 505....................................................................................................................6, 8

## OTHER AUTHORITIES

Fed. R. Civ. P.
    12......................................................................................................................13
    12(b)(6) ..............................................................................................................13
    12(c) ..................................................................................................................24

## **PRELIMINARY STATEMENT**

This Court found that Plaintiffs August Image LLC's ("August Image") and Mark Seliger's (collectively, "Plaintiffs") case was not only meritless, it was *implausible*. To any reasonable observer, defendants Girard Entertainment & Media and Keith Girard's (collectively, "Girard") use of an Instagram post, which happened to include the poster's use of a 1995 magazine cover image (the "Image") as part of a means for a cast member to subtly report that a popular television series was returning, was a classic type of "comment" and "news reporting" enshrined expressly in the Copyright Act as fair use. As the law recognizes, fair use is supposed to prevent the abuse of copyright rights in a way that creates a chilling effect on speech.

Lawsuits like this one chill speech. Not just in this case, but as a warning to everyone who may make fair use: Plaintiffs believe that even where it is clear that the law permits free speech, reporters and journalists must pay over $10,000 to report on something that might incorporate the Plaintiffs' work—even if the work has an admitted market value of less than $500 for ornamental or other non-fair-use purposes. And, if the writer does not pay the ransom, the Plaintiffs will "take it all the way," burying writers in legal cost as happened here. As a result, the writer has no choice but to censor himself and his own creative expression, meaning that the purposes of Section 107 are nullified. Any reporter or journalist who learns about a situation like the one here will not avail herself of fair use, declining to take advantage of the doctrine in even obvious cases where plaintiffs' lawyers (including the small firm here, which has filed nearly 1100 federal copyright cases in the past five years) will sue with the knowledge that it is cheaper for the defendant to pay an unwarranted, windfall "license fee" than to fight.

Fortunately, the fee-shifting provisions of the Copyright Act guard against such abuse by financially protecting those who fight back against meritless claims. Time and again, courts have

1

determined that where a copyright infringement claim is meritless—including where fair use is apparent from the face of the complaint—the innocent defendant should not be left with a massive bill. Indeed, the Supreme Court recently has reaffirmed that litigation like Girard undertook bolsters the Copyright Act and its principles, and courts should be encouraged to reinforce that those who will help advance those principles will not be saddled with a legal bill.

Not without significant expense to an individual whose life has been materially impacted by the case, Girard finally has been able to stand up against Plaintiffs' scheme and see it through to victory, even though settling—even at the unjustifiably outsized price Plaintiffs demanded— would have cost less than the fight. These efforts serve the purposes of the Copyright Act in creating clarity for others who may be similarly bullied by professional plaintiffs who care more for money than for the law. An award of fees would also serve those policies by making Plaintiffs responsible for pursuing a case that would have resulted in censorship of fair journalism via the abuse of the contours of the Copyright Act. As the law and equity compel, Girard's motion should be granted in full accordingly.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Seliger is a photographer and serial copyright plaintiff; since 2020, he has commenced nearly 30 copyright infringement lawsuits in federal court. Declaration of Eleanor M. Lackman ("Lackman Decl."), at ¶ 11. Seliger often is represented by the frequent-filing Doniger Firm, which has filed at least 1088 copyright lawsuits in federal court in the past five years, on a consistently growing basis annually, almost none of which have made their way to trial. *Id.* & Ex. D, E. August Image is relatively new on the scene but, like Doniger Firm-represented Creative Photographers International (CPI), has been set up in order to relieve photographers of the task of being litigants themselves—the same purpose behind now-defunct

2

entity Righthaven.[1] Since then, plaintiff August Image also has become a mass filer of lawsuits, generally in conjunction with the Doniger Firm, having filed nearly 80 copyright infringement suits in federal court since 2020. Lackman Decl. ¶ 11.

Plaintiffs are the type of party that the Court noted "use lawsuits to extort an amount of money that is outrageous and bears no relationship to the value of the photograph or to what the defendant has done." Lackman Decl., Ex. C at 24:13-16. In this case, Plaintiffs sued for $150,000 in damages plus various other sorts of remedies, plus legal fees and costs—an absurd demand for the use of an Instagram post that only contained the Image because it was what a *Friends* case member chose to use a his way of announcing the return of the successful television series. As discussed below, subsequent demands remained unreasonable.

Girard Entertainment & Media LLC currently, following cuts due to legal expense, is a single-employee entity. Declaration of Keith Girard ("Girard Decl.") at ¶ 2. Historically, the entity's focus has been on entertainment-related news through various online titles. *Id.* Keith Girard is a grandfather of two and an award-winning reporter, editor, and media executive who for over 40 years has worked as a reporter, editor-in-chief, and media executive at leading newspaper, entertainment and lifestyle publications such as *The Washington Post*, *The Maryland Daily Record*, and *Billboard*. *Id.* at ¶¶ 3-6, 13. He understands and respects copyright law and knows where and how to get licenses, and what fair use is. *Id.* at ¶¶ 7, 11. In particular, he has licenses with major suppliers of entertainment images to large outlets such as Tribune, Reuters, and the

---

[1] *See Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013). A Copyright Small Claims Board, which offers a streamlined process in which even corporate parties can represent themselves in claims up to $30,000 without the need to hire expensive counsel, was launched in June 2022 as part of the Copyright Alternative in Small-Claims Enforcement Act of 2020. *See* Copyright Claims Board, https://ccb.gov. There is no evidence that either Plaintiff has ever availed himself or itself of it, likely because they know that even with a cut of recovery going to the Doniger Firm, they can net more due to the high cost of needing counsel in federal court.

AP, as well as licenses with publishers of popular magazines (e.g., Conde Nast, Hearst, Meredith), which rely on online publishers like Girard to help promote new issues of these magazines when they are published through providing previews of leading stories. *See id.* & Ex. A. Until the Doniger Firm came along with its scheme of filing belated suits over licensed uses, Girard never encountered any issues with respect to third-party content.[2]

In this case, Plaintiffs were made aware of all of Girard's defenses, which were discussed in detail in the mediation and elsewhere. Yet, even after admitting that they inexplicably did not supply proper evidence (even though both Plaintiffs purportedly were directly involved in the case),[3] Plaintiffs said they only would let Girard out of the case on the condition that he pay at least multiple thousands of dollars—many times a reasonable licensing fee, in a case where Plaintiffs must have known no license was required. Girard Decl. ¶ 12. *EMI Catalogue P'ship v. CBS/Fox Co.*, No. 86 Civ. 1149 (PKL), 1996 WL 280813, at *2 (S.D.N.Y. May 24, 1996) ("[T]he Court can consider evidence of settlement negotiations where, as here, that evidence is probative of the objective unreasonableness of the claim for purposes of determining whether to award attorney's fees under the Copyright Act."). For his part, Girard offered to settle for an amount higher than Judge Woods recently awarded for a case with no real fair use defense (*Otto v. Hearst Commc'ns, Inc.*, 1:17-cv-4712 (GHW) (S.D.N.Y. Jan. 23, 2020) ($750 judgment)), but Plaintiffs refused to take it, standing firm on their demand in the desire to profit for a use that the law permits.

---

[2] The statute of limitations in copyright law is three years. However, with laches unavailable in copyright law, the ability to use the "discovery rule" to defeat motions to dismiss has catalyzed a business line of low-value lawsuits directed at uses that are older than any reasonable person would be expect to retain licensing records; the defendant in turn settles due to the cost of discovery. This issue has made an appearance in the case captioned *Warner Chappell Music, Inc. v. Nealy*, 22-1078, argued before the Supreme Court of the United States on February 21, 2024.

[3] This is not the first time that the Doniger Firm has not been cooperative or otherwise compliant with disclosure rules and court orders. *See* Lackman Decl. Ex. F at 4, 7 (awarding $21,484.17 in fees on grounds that, *inter alia*, counsel's failure to supply document despite order to do so).

*See* Girard Decl., ¶ 12; Lackman Decl., ¶ 9.

Ordinarily, this Court would issue an order to show cause in such a context, *see* Lackman Decl. Ex. C at 16:8-10, 18:11-12, but Plaintiffs' choice of pleading to obscure the use, *see id.*, caused the parties to go through a mediation and leave it on Girard to lead the fair use motion practice. All of this caused Girard more cost. However, having been met with three new lawsuits after settling the first one from the Doniger Firm, Girard had no choice but to pursue the motion to avoid being bullied yet again. Girard Decl., ¶¶ 8-12. Further, despite the hits that his publications and personal finances have taken as a result of having to defend his licenses and rights to free speech, *id.* at 13-14, the Doniger Firm's history of believing that both licensed and fair uses command a windfall license fee gave Girard no choice but to fight for his right to rely on fair use—a principle that is so important to this Nation's tradition of free speech that it appears directly in the preamble of Section 107. *See id.* at ¶ 12.

On March 29, 2024, this Court ruled in Girard's favor, finding that it was implausible that the use at issue was not a fair use. The 2020 article itself has lost its value because it was now devoid of context, and Plaintiffs ended up with the Image removed unjustly out of caution. Girard, however, incurred $19,176.02 in fees and costs to get to the point that the Instagram post (containing the Image) never should have been removed at all, and that August Image's aggressive and opportunistic attacks on Girard disserve the purposes of the Copyright Act.

As the owner and operator of a small business, these costs have been particularly burdensome. Girard has had to suspend publication of two web publications and dramatically cut expenses at The New York Independent, including all expenditures on advertising and almost all contributing writers, depriving them of much needed income. Instead, the funds have been used to cover legal costs. In addition, he has had to nearly exhaust the business's credit line and sell

substantial assets out of his retirement account to fund ongoing operations and pay legal bills. Budget constraints caused by this litigation have severely impacted his ability to successfully operate his business, taking away hundreds of hours of his time and impacting his ability to generate income and pay household expenses. *Id.* at ¶¶ 13-14.

## ARGUMENT

## I.   GIRARD IS ENTITLED TO RECOVER HIS ATTORNEY'S FEES

### A.   Standard for Award of Attorney's Fees Under the Copyright Act.

Section 505 of the Copyright Act, 17 U.S.C. § 505, permits the Court, in its discretion, to award costs and "reasonable attorney's fee[s]" to the "prevailing party." Unlike the "American rule" that typically applies in federal litigation, the discretion to award attorney's fees and costs to the prevailing party is integral to the purposes of copyright law. Indeed, fees should be awarded to "encourage the types of lawsuits that promote th[e] purposes [of the Copyright Act]," including the enrichment of the public through broad dissemination of creative works. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204 (2016). These purposes also are furthered by encouraging litigation of meritorious defenses and by deterring "overaggressive assertions of copyright claims[.]" *Id.* at 1985, 1989.

Fee-shifting is vital to maintaining the important balances in the Copyright Act. Indeed, without the prospect of a fee award, the injured party "might be forced into a nuisance settlement or deterred altogether from enforcing his rights." *Harrell v. Van Der Plas*, No. 08 Civ. 8252 (GEL), 2009 WL 3756327, at *5 (S.D.N.Y. Nov. 9, 2009) (Lynch, J., by designation). Prevailing defendants are to be treated equally to plaintiffs, such that defendants are "encouraged to litigate [meritorious copyright defenses] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Kirtsaeng*, 579 U.S. at 202 (cleaned up); *accord*

*Protoons Inc. v. Reach Music Publ'g, Inc.*, No. 09 Civ. 5580 (KBF), 2016 WL 680543, at \*5 (S.D.N.Y. Feb. 19, 2016)*, aff'd*, 718 F. App'x 8 (2d Cir. 2017). "[A] successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1984). Thus, "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.* To that end, courts have repeatedly awarded attorney's fees to defendants who have successfully defended against copyright claims, including claims that are more complex than those at issue here.[4]

There is no question that Girard was the "prevailing party" in this case: he won the motion for judgment on the pleadings, the Court dismissed the case with prejudice and without leave to replead, and Plaintiffs were awarded nothing. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001) (a prevailing party is "one who has been awarded some relief by the court."). Further, Girard prevailed on the merits, on a defense that states that the fair use of a copyrighted work for purposes such as "comment" and "news reporting" "is not an infringement of copyright." 17 U.S.C. § 107. Indeed, as nobody seriously disputed (*see* Lackman Decl., Ex. C at 18:20-19:9), the article commented on the Instagram post and reported on the existence of the post, which used the Image, as a means to

---

[4] Just by way of recent example, *see, e.g., Kanongataa v. Am. Broad. Cos.*, No. 16-cv-7382 (LAK), 2017 WL 4776981 (S.D.N.Y. Oct. 4, 2017) (Kaplan, J.) (news publishers' use of video posted on Facebook to report on existence of video on Facebook held to be fair use; fees awarded on motion to dismiss); *TufAmerica Inc. v. Diamond*, No. 12-CV-3529 (AJN), 2018 WL 401510 (S.D.N.Y. Jan. 12, 2018); *Mahan v. Roc Nation, LLC*, No. 14 Civ. 5075 (LGS), 2015 WL 4388885 (S.D.N.Y. July 17, 2015), *aff'd*, 634 F. App'x 329 (2d Cir. 2016) (summary order); *Pyatt v. Raymond*, No. 10 Civ. 8764 (CM), 2012 WL 1668248 (S.D.N.Y. May 10, 2012); *Porto v. Guirgis*, 659 F. Supp. 2d 597 (S.D.N.Y. 2009); *Chivalry Film Prods. v. NBC Universal, Inc.*, No. 05 Civ. 5627 (GEL), 2007 WL 4190793 (S.D.N.Y. Nov. 27, 2007).

announce that the *Friends* television show was returning.[5]

While there is no precise formula for determining whether an award of fees is appropriate, courts exercising their discretion consider several non-exclusive equitable factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case)[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 147 (2d Cir. 2001) (quoting *Fogerty*, 510 U.S. at 534 n.19). Notably, "bad faith or frivolousness is not a prerequisite to an award of fees" under the Copyright Act. *Screenlife Establishment v. Tower Video, Inc.*, 868 F. Supp. 47, 52 (S.D.N.Y. 1994). The Supreme Court has further explained the need for a set of principles to guide the district court's discretion. *Kirtsaeng*, 579 U.S. at 208 (in deciding whether to fee-shift, courts "must take into account a range of considerations beyond the reasonableness of litigating positions."). Similarly, this Circuit, in reversing the denial of a fee award, recently noted that "the Supreme Court has approved of a fee award under Section 505 based primarily on considerations of compensation and deterrence, even where a litigation position was not objectively unreasonable." *16 Casa Duse, LLC v. Merkin*, 740 F. App'x 223, 225 (2d Cir. 2018) (citing *Kirtsaeng*, 579 U.S. at 209).

Moreover, pursuant to the Supreme Court's observation in *Kirtsaeng*: "[A] court may [order fee-shifting] *to deter repeated instances* of copyright infringement or overaggressive assertions of copyright claims, again even if the losing position was reasonable *in a particular case*." 579 U.S. at 209 (citing *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593-95 (6th Cir. 2008)) (emphases added); *see also 16 Casa Duse*, 740 F. App'x at 225 (vacating district

---

[5] Likewise, Plaintiffs have never been able to explain how the words "It's happening," from an actor who has appeared in a variety of television shows and films, would convey any context to a reader.

court's denial of request for attorney's fees and holding that a fee award in some amount was warranted, even where "a litigation position was not objectively unreasonable").

### B.     Plaintiffs' Mischaracterized Positions and Pursuit of an Obvious Fair Use Was Objectively Unreasonable.

A copyright claim is "objectively unreasonable" if it is "clearly without merit or otherwise patently devoid of a legal or factual basis." *Porto*, 659 F. Supp. 2d at 617; *accord Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001) ("'Objective unreasonableness' is generally used to describe claims that have no legal or factual support."). The lengths to which Plaintiffs had to go to mischaracterize the facts and law demonstrates that Plaintiffs knew their claim was objectively unreasonable.

*First*, Plaintiffs misrepresented the facts. For example, the claimed that they owned rights in the entire Instagram post by referring to the post and the Image interchangeably throughout their papers, to suit Plaintiffs' needs. *See* ECF No. 44 at 3, 17. Of course, none of that was true, but Plaintiffs either copied the argument from some other brief in the firm's files or determined that they had to make such false claims because they knew that the use was fair.

Relatedly, in all three iterations of their Complaint, Plaintiffs misrepresented how the Image was used. For instance, Plaintiffs said that Girard took the Image out of the post and used only that for decorative purposes. *See id.* at 3 ("Defendants copied the entirety of the Subject Photograph from a proper licensee's[6] Instagram post" and "used it as a banner image of an article" that purportedly makes no mention of the post that depicted the *Friends* cast). Moreover, not only did they claim that *only* the Image was used (and not the overall combined Instagram

---

[6] As discussed at the August 25, 2023 hearing, it was later revealed, after Plaintiffs' counsel admitted that he had not provided invoices for transactions that were actually consummated, that Plaintiffs *never* received a license fee or produced a license for the use by the cast.

post), but they also cropped the use so heavily that it obscured—even to the Court—that there was commentary and news reporting on the Instagram post that had used the Image. *See* Lackman Decl. Ex. C at 16:8-11; 18:20-19:9. With genuine context, it likely would initially have been apparent to the Court upon filing that the Image appeared in a full article that included several paragraphs roughly 40 sentences in length, among them: "Schwimmer, who played Ross, confirmed in an Instagram post that the cast had agreed on a 'Friends' special." Instead, the parties went through a mediation, preparation of an answer, a joint letter and case management plan, and appearance at an in-person hearing, followed by briefing with Girard taking the task of being moving party, rather than putting the burden on Plaintiffs to be ordered to show cause why the claim should not be dismissed on fair use grounds.[7]

*Second*, Plaintiffs misrepresented the applicability of the law. Ignoring the extensive citations to situations where a photograph is used to report on a newsworthy event because the use of the photograph is a newsworthy event, or where other commentary relating to the image is apparent (*see*, *e.g.*, ECF No. 34 at 5-6), Plaintiffs claimed that plain illustrative uses made for their original purpose were better analogues in the context of a case where an Instagram post, created by one of the cast (*not* Girard as Plaintiffs suggested), happened to use the Image in order to announce the return of a beloved television series.

The law, in highly similar cases, confirmed squarely and objectively that Plaintiffs' position would lose on the overall fair use defense, and that the failure to appreciate that such

---

[7] August Image has shown a pattern of cropping images to misrepresent what has been included on Girard's sites. *See August Image, LLC v. Girard Entertainment & Media, et ano.*, No. 21 Civ. -9397 (ER), ECF No. 33 at 21-22 (identifying misrepresented cropped image in Second Amended Complaint, following which August Image sought to amend the complaint to moot the issue and in doing so deleted all relevant claims from the case with prejudice). It is unclear why Plaintiffs believe that federal judges will fall for such tactics, or perhaps the cost of making such motions is enough financial upside to plaintiffs to warrant taking the risk.

uses are fair merits compensation to the defendant that must incur the cost of upholding the purposes of copyright law. *See*, *e.g.*, *Konangataa v. Am. Broad Coo.*, No. 16-cv-7382 (LAK), 2017 WL 2684067, at *2 (S.D.N.Y. June 21, 2017) (opining, after dismissal based on fair use: "This Court concludes, in the exercise of its discretion, that awards of attorney's fees to the defendants would much better serve the purposes of the Copyright Act than the denial of such awards"); *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013) (awarding attorney's fees after dismissal based on fair use because "lawsuits of this nature . . . have a chilling effect on creativity insofar as they discourage the fair use of existing works in the creation of new ones."); *Caner v. Autry*, No. 14-cv-00004, 2014 WL 2967607, at *9 (W.D. Va. July 1, 2014) (awarding fees to the prevailing defendant in a fair use case and noting that "[o]nce initiated, Plaintiff increased the work load by rejecting an eminently reasonable settlement offer at the beginning of this litigation, and by making untenable arguments throughout.").

The outcome of this case was obvious to anyone familiar with copyright law and fair use. Notably, the Court cited established, on-point rulings—including primarily appellate-level rulings—to easily and quickly dismiss Plaintiffs' case. *See, generally*, Order at 4-11. In multiple instances, the Court described Plaintiffs' argument as "conclusory." *See, e.g.,* Order at 8, 11. The fact that Plaintiffs could not allege facts, even at the pleading stage, which were "plausible" underscores that the claim should not have been brought. *See*, *e.g.*, Order at 10 ("Plaintiffs do not plausibly allege" market harm or substitution, *citing*, *inter alia*, *Marano v. Metro. Museum of Art*, 844 F. App'x 436, 439 (2d Cir. 2021), and *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 586 (S.D.N.Y. 2020) ("Here, because the Photograph did not appear on its own, but as part of the Post . . . it is implausible that Defendant's use would compete with Plaintiff's business or affect the market or value of her work.")).

Plaintiffs were not just simply on the wrong side of the law. They willfully misrepresented specific, key authorities. Plaintiffs disingenuously cited a Ninth Circuit ruling involving a stock image of a nature scene, which the defendant there used purely for decorative purposes, as purportedly "very similar." ECF No. 44 at 4. According to Plaintiffs, none of the fair use cases involving news media, which Girard and the Court cited, had any relevance. Plaintiffs simply ignored these cases as if they did not exist, relying instead extensively on *Lee v. Karaoke City*, 18 Civ. 3895 (PAE), 2020 WL 5105176 (S.D.N.Y. Aug. 31, 2020), an unreported case involving a denial of summary judgment on a fair use defense (among other kitchen-sink theories) where a defendant took 2000 of the plaintiff's copyrighted songs for use in karaoke machines. This tactic is yet another tell that—even after the Court made it clear to counsel what the appropriate framework was (*see* Lackman Decl., Ex. C at 18:20-19:9)—Plaintiffs knew that their efforts to censor Girard from fairly discussing a newsworthy event introduced, via a third-party's use of an image that could only refer to the television show *Friends*, would fail.

Perhaps the most glaring example of misrepresentation concerned a directly on-point case, *Walsh*, which involved commentary pertaining to an Instagram post that contained a plaintiff's photograph. Plaintiffs dismissed *Walsh*, which as noted above this Court discussed in its Order, by saying that it was somehow different because the "***the copyrighted work*** [was] ***itself*** the subject of the story." ECF No. 44 at 8 (quoting *Walsh*, 464 F. Supp. 3d at 581 (emphasis added)). However, the quotation Plaintiffs used came from a general overview of principles that apply to various types of fair uses. *Id.* Plaintiffs' citation was ***not*** to the holding itself. That holding—remarkably—noted that the defendant's use of an *Instagram post* (*i.e.*, not the "copyrighted work" as Plaintiffs suggested was so), "which incidentally contained the Photograph, because the Post . . . was the very thing the Article was reporting on[,]" was fair use,

*id.* at 582, ***just like here***. Accordingly, Plaintiffs' mischaracterization of the case was not just objectively unreasonable, it was dishonest. Plaintiffs' failure to make ***any*** effort to distinguish or otherwise address this nearly-identical case on the merits shows that they could not.

*Third*, Plaintiffs misrepresented the law regarding the Court's ability to decide the motion at the pleading stage. Indeed, after conceding that the Court was competent to review a fair use question on a motion to dismiss (Lackman Decl., Ex. C. at 18:6-19; 19:13-14; 25:6), Plaintiffs aggressively resisted the idea. In particular, to bolster their goals to ensure that Girard would have to settle given the cost of discovery, Plaintiffs protested vigorously in their papers that the Court must wait until Girard incurred more cost before the Court could rule on the merits. *See* ECF No. 44 at 1 (caveating fair use question "at the pleading stage"); *id.* at 2 (relying on overruled "no set of facts" standard); *see also id.* at 3 (claiming that fair use needs to be proven "beyond reasonable doubt"); *id.* at 17 (a defendant must "prove beyond a doubt that their use was fair" under the "strict standards of Rule 12(b)(6)"). They ignored completely the litany of cases that Girard cited, including but not limited to the recently decided *Marano* decision involving the use of an image for purposes in the preamble of Section 107 of the Copyright Act. *See Marano*, 844 F. App'x at 439. Instead of addressing the law or recognizing that they agreed that the Court was competent to decide the issue, Plaintiffs made up a brand-new test for how courts should assess fair use questions at the pleading stage. *Id.* at 4 (citing no authority).

Moreover, dismissing multiple Rule 12 cases involving fair use arguments as "distinguishable," without saying how that was so, Plaintiffs went one step further. They claimed that there was ***no*** authority for a ruling at the pleading stage in a case such as this. *Id.* at 3. They did so even though the Second Circuit has held that it is not necessary until the parties have expended resources when the use is plain at the pleading stage. *See* Order at 4 n.6 ("[D]ismissal

of a copyright infringement claim is warranted where fair use is clearly established on the face of

the complaint.") (citing *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016)).

And this tactic from Plaintiffs forced Girard to have to incur more cost in knocking down yet

another straw-man argument. As discussed in Part I.C., *infra*, delay is key to Plaintiffs' business

model. But it does not justify baseless arguments that competent counsel should know have no

merit and had already conceded had no merit.

In situations like these, courts in this District find that equity compels an award of fees.

*See Walsh v. Townsquare Media, Inc.*, No. 19-cv-4958 (VSB), 2022 WL 1302216, at *2

(S.D.N.Y. May 2, 2022) (noting that the case "was not a close call" and citing the fact that

plaintiff's counsel took objectively unreasonable litigation positions that require one to

"disregard the actual facts of this case" as part of awarding fees) (citations omitted; cleaned up);

*Amanze v. Adeyemi*, No. 18 Civ. 8808 (NRB), 2019 WL 2866071, at *10 (S.D.N.Y. July 3,

2019) (fees awarded where arguments were based on mischaracterizations of the facts); *see also*

*Baker v. Urb. Outfitters, Inc.*, 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006) ("the policies behind

the Copyright Act would be violated by requiring [the defendant] to bear its own costs and fees"

to defend against an objectively unreasonable claim) (citations omitted), *aff'd*, 249 F. App'x 845

(2d Cir. 2007).[8]

---

[8] Judge Broderick explained in words that could equally apply here: "Even though it was
apparent on the face of the Article that "Defendant did not publish the Photograph simply to
present its content, . . . Plaintiff's counsel obstinately pretended otherwise. In the briefing leading
up to the Opinion, Plaintiff's counsel argued that Defendant used the Photograph merely to
illustrate "a news report about Cardi B at Tom Ford's fashion show," which I found to be
manifestly untrue. *Walsh*, 2022 WL 1302216, at *2 (cleaned up). *Compare* ECF No. 44 at 3, 17
(claiming use of Image was solely illustrative or decorative).

### C. Plaintiffs Were Motivated by Earning Money—and Further Intimidating Girard in the Other Pending Cases—Rather Than by a Legitimate Desire to Enforce Rights that They May Have Had.

Here, however, the unreasonableness of Plaintiffs' litigating positions went even further than the bad-faith misrepresentation of the facts and law in an objectively unreasonable way in an objectively unreasonable lawsuit. They were out for money, just like the breed of plaintiff the Court astutely described at the August 2013 hearing. Lackman Ex. C, at 24:13-16.

Not only did Plaintiffs inform Girard a week after the court-ordered mediation that Plaintiffs were aware at the mediation that their four- and five-figure invoices (for commercial use) were never actually paid, but they concealed this information to support their demand at the mediation for over $11,000 to settle a case where the only purported editorial licenses—for featured uses, not fair uses—of the Image fell in the mid to low three figures. Lackman Decl. at ¶ 9. Plaintiff Seliger even declared unilaterally that he would not appear at the mediation, and when the mediator ordered him to appear, Plaintiffs demanded $8500 as a take-it-or-leave-it offer, or else they would take the case "all the way." *Id.* at ¶¶ 8-9 & Ex. B. In the spirit of cooperation, Girard offered more than what Seliger had ever received for any editorial license (fair use or not), but Plaintiffs' counsel responded uncivilly with respect to such a proposal despite that Plaintiffs' counsel was well aware that the use was fair. *Id.* at ¶ 8. Following the mediation, Plaintiffs *still* demanded multiple thousands of dollars—well in excess of any documented license fee for any type of use—to drop their case. *Id.* at ¶ 9; *see also* Girard Decl. ¶ 12. Demonstrating unsupported confidence in their views, nowhere did Plaintiffs take into consideration *any* possibility that they might lose, much less be responsible for fees.

This sort of behavior is a classic indicator of improper motivation. *Torah Soft Ltd. v. Drosnin*, No. 00-cv-5650-JCF, 2001 WL 1506013, at *5 (S.D.N.Y. Nov. 27, 2001) ("[A] party that knowingly gambles on an unreasonable legal theory in order to achieve a secondary gain . . .

15

is indeed improperly motivated."); *Walsh*, 2022 WL 1302216, at **3-4 (demand for $25,000 for use of image where plaintiff's "high-end" expected damages would not reach more than $5,000 demonstrated plaintiff's improper motivation and bad faith conduct). The presence of an "improper motivation" in bringing a lawsuit "weighs heavily" in favor of an award of attorney's fees. *Baker*, 431 F. Supp. 2d at 357; *see also Video-Cinema Films, Inc. v. Cable Network, Inc.*, No. 98 Civ. 7125(BSJ), 2003 WL 1701904, at *5 (S.D.N.Y. Mar. 31, 2003) (motive improper where claim was "nothing more than an obvious effort to use the Copyright Act to secure payment" from parties with a valid defense).[9]

Further, this case is admittedly one in a series of three cases that the Doniger Firm brought, with no reasonable or any advance notice, after Girard paid a significant amount of money to pay for uses of licensed images; unfortunately, the evidence had been lost due to the belated timing of the claims, and with no laches in copyright law, Girard was in for a slog. Girard Decl. ¶¶ 8-10. One of those cases, involving CPI, was nearly decided on summary judgment following document discovery and depositions, when the evidence showed that not only did CPI not have standing to sue over any of the uses, but the photographers that CPI purportedly represented had either (1) expressly given their rights away as made for-hire, or (2) provided Girard's licensors (the magazines) with the exact sublicensing rights that Girard has represented he has had from those magazines. *Id.* at ¶ 9. Fortunately for CPI, Judge Rakoff sent

---

[9] Plaintiff's "inflated settlement demand . . . further bolsters [the] objective unreasonableness [of his claims], as a major discrepancy between damages demanded and a claim's reasonable expected value can speak to the unreasonable nature of [copyright] claims." *Walsh*, 2022 WL 1302216, at *3, n.5 (internal quotation marks and citations omitted); *see also, e.g., Keck v. Mix Creative Learning Ctr., LLC*, No. 4:21-CV-00430, 2023 WL 2652259, at **1-3 (S.D. Tex. Mar. 27, 2023) (finding infringement claim was objectively unreasonable and awarding fees, where the defendant made "a gross revenue of $240" and the plaintiff sought "statutory damages in an amount up to $150,000.00 per work, for a combined total of up to $900,000") (internal quotation marks and citation omitted).

the parties to mediation right before briefing, and CPI quickly took the first offer Girard made. *Id.* In the remaining pending case, August Image dropped two of its three causes of action, as well as *92%* of the images it claimed, with prejudice, but only after Girard had to incur the cost of motion practice. *See id.* at 10.

Given the prior settlement, Plaintiffs' blinkered fixation on Girard perhaps made some business sense, but it makes no legal sense. Nor is it equitable. Perpetuating this case, where Plaintiffs cannot even represent the facts honestly nor explain away on-point law, can only be explained by the success of the Plaintiffs' business model: the defendant will pay an outsized tax rather than spend more to get the case to judgment, so the plaintiff need not worry about the occasional loss because it is not paying fees anyway if it loses. *See Sands v. Bauer Media Grp. USA, LLC*, No. 17-cv-9215 (LAK), 2019 WL 4464672, at *1 (S.D.N.Y Sept. 18, 2019) ("A copyright troll plays a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim"; fees awarded) (internal quotation omitted).

Tellingly, despite conceding the value of prior licenses in open court, Plaintiffs sought injunctive relief, profits relating to the use, and lost licensing fees, plus up to $150,000 in statutory damages, costs of the action, attorney's fees, and other unspecified costs and fees, as well as a constructive trust. *See* FAC, Prayer (a)-(i). They indicated at mediation that unless Girard paid nearly $10,000 for the use, litigating this case was the alternative. Lackman Decl. ¶ 9. While the effectiveness of such threats seems to be propelling the growth of the courts' caseloads, *see id.*, ¶ 11 & Ex. D, this is inappropriate and contrary to the purposes of the Copyright Act. *See Bell v. Carmen Com. Real Est. Servs.*, No. 1:16-cv-01174 (JRS) (MBP), 2020 WL 5016891, at *5 (S.D. Ind. Aug. 25, 2020) (awarding attorney's fees where the plaintiff

"typically licensed the photograph [at issue] for $200" and sought "$150,000 in statutory damages"); *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 529 F. Supp. 3d 605, 616, 618 (N.D. Tex. 2021) (awarding attorney's fees because, *inter alia*, plaintiff's $150,000 demand was "exorbitant"), *aff'd*, 27 F.4th 313 (5th Cir. 2022).

Equity looms large particularly in this context, one combining the above approach with a potential restraint on free commentary and criticism—a key, statutorily recognized value that falls at the heart of Section 107. As the Ninth Circuit observed in *SOFA Ent., Inc.*, "lawsuits of this nature . . . have a chilling effect on creativity insofar as they discourage the fair use of existing works in the creation of new ones." 709 F.3d at 1280.  That chilling effect is of special concern given the recent proliferation of copyright "strike suits, designed to extort settlements from defendants on the basis that the defense costs would exceed what plaintiff would accept in settlement." *Sands*, 2019 WL 4464672, at *1.  If left unchecked, such gaming of the system will discourage legitimate fair use, frustrating the core purposes of the doctrine. Plaintiffs know that they should consider fair use when suing over a use like the one at issue, as well as in making any settlement demands. The fact that they did not is a hallmark of bad faith, and the Copyright Act's fee-shifting provision is designed to put teeth behind preventing efforts like those made here.

   **D.    Girard Should be Compensated for Ensuring that Fair Use Principles Are Protected and Reinforced, and Plaintiffs Should be Deterred from Bringing Meritless Claims.**

The Supreme Court has stated that attorney's fees should be awarded in a way that "encourages parties with strong legal positions to stand on their rights and deters those with weak ones from proceeding with litigation."  *Kirtsaeng*, 579 U.S. at 205.  Awarding Girard its attorney's fees in this case would do exactly that.  Indeed, it is clear that a primary purpose of the Copyright Act—*i.e.*, to "enrich[] the general public through access to creative works" (*id.* at 204

(quoting *Fogerty*, 510 U.S. at 527))—would be served by compensating Girard for his financial and other sacrifices in vindicating his meritorious fair use defense, Girard Decl. ¶¶ 13-14, and deterring Plaintiffs and others from pursuing similarly meritless and overaggressive assertions of copyright claims. *Rodriguez v. Klum*, No. 05-CV-10218 (LAP), 2009 WL 73115, at *2 (S.D.N.Y. Jan. 8, 2009) (fee award necessary to deter copyright holders from bringing unreasonable actions without risk of any downside); *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 668 (S.D.N.Y. 2001) ("Failing to award attorney's fees to defendants" in a case involving "a straightforward copyright infringement claim that was objectively unreasonable" would "invite others to bring similarly unreasonable actions without fear of any consequences.").[10]

Shifting fees to Girard would send a message that the public can and should take advantage of the fair use doctrine to help encourage commentary, news reporting, and other forms of beneficial speech without fear of censorship due to frivolous copyright claims. *See also Crown Awards, Inc. v. Disc. Trophy & Co.*, 564 F. Supp. 2d 290, 295 (S.D.N.Y. 2008), *aff'd*, 326 F. App'x 575 (2d Cir. 2009) ("An award of attorneys' fees to prevailing parties would encourage the parties to bring meritorious claims and therefore would help demarcate 'the boundaries of copyright law . . . as clearly as possible in order to maximize the public exposure

---

[10] As the Court in *Kirtsaeng* explained: "When a litigant – whether plaintiff or defendant – is clearly correct, the likelihood that he will recover fees from the opposing (*i.e.*, unreasonable) party gives him an incentive to litigate the case all the way to the end.  The holder of a copyright that has obviously been infringed has good reason to bring and maintain a suit even if the damages at stake are small; and likewise, a person defending against a patently meritless copyright claim has every incentive to keep fighting, no matter that attorney's fees in a protracted suit might be as or more costly than a settlement. . . . [T]hose results promote the Copyright Act's purposes, by enhancing the probability that both creators and users (*i.e.*, potential plaintiffs and defendants) will enjoy the substantive rights the statute provides." 579 U.S. at 205.

to valuable works.'") (citation omitted). It would also send a message that who stand up to mass copyright litigants, who sue indiscriminately over every image they see whether or not a fair use or defense applies, will not have to make the choice between paying five figures for a valueless license or five figures or more to a lawyer to reach an outcome that would be *prima facie* obvious to anyone familiar with copyright law. Thus, a fee award in this case would "compensate [Girard] for [his] defense of an action that should not have been brought." *TCA Television Corp. v. McCollum*, No. 15 Civ. 4325 (GBD)(JCF), 2018 WL 2932724, at *5 (S.D.N.Y. June 12, 2018).

On the other side of the coin, "the denial of [fee] awards in objectively unreasonable cases also disserves the purposes of copyright law, by failing to protect [parties] from the cost of frivolous litigation." *Chivalry Film Prods.*, 2007 WL 4190793, at *3 (emphasis omitted). Without the prospect of an award of attorney's fees, there is nothing to deter Plaintiffs and other like-minded potential plaintiffs from similarly ignoring the fair use doctrine and "roll[ing] the dice" on unreasonable copyright claims in effort to "score big" against small operators like Girard. *Baker*, 431 F. Supp. 2d at 359-60; *see also Charles v. Seinfeld*, No. 18-cv-1196 (AJN), 2021 WL 761851, at *4 (S.D.N.Y. Feb. 26, 2021) ("[T]he prospect of a huge payday may entice litigants to pursue claims with little or no merit. Substantial deterrence is needed to counterbalance these incentives."). An award of attorney's fees is necessary to appropriately deter Plaintiffs and others from clogging the courts' already full dockets with similarly meritless and/or low-value copyright claims in pursuit of an unwarranted settlement payment. Lackman Decl., ¶ 11. *See Kirtsaeng*, 579 U.S. at 209 ("[A] court may [order fee-shifting] to deter . . . overaggressive assertions of copyright claims, [ ] even if the losing position was reasonable in a particular case.") (citation omitted).

Plaintiffs rolled the dice. They lost. They never had any argument that the use was not

fair, and there was plenty of law in their way. They made meritless arguments, misconstrued on-

point case law, and did everything in their power to try to get a multi-thousand-dollar payment

out of Girard when clearly ***none*** was warranted. Plaintiffs have already won enough at the table

in forcing others to fold. They should have to pay this time.

## II.    THE AMOUNT OF ATTORNEY'S FEES REQUESTED IS REASONABLE

### A.    The Standard for Establishing a Presumptively Reasonable Fee.

Once a court decides to award attorney's fees under the Copyright Act, it must determine

the appropriate amount to award.  The court has "considerable discretion" in determining what

constitutes "reasonable" attorney's fees.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n*

*v. Cnty of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).  Courts in the Second Circuit employ the

"presumptively reasonable fee" method, which is calculated based on the "lodestar"—that is,

"the product of a reasonable hourly rate and the reasonable number of hours required by the

case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citations omitted).

"The presumptively reasonable fee boils down to 'what a reasonable, paying client would

be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the

case effectively.'"  *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citation

omitted).  To assist courts in "stepping into the shoes of the reasonable, paying client," the

Second Circuit has outlined a number of "case-specific variables" for courts to consider,

including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
> the  level of skill required to perform the legal service properly; (4) the preclusion
> of  employment by the attorney due to acceptance of the case; (5) the attorney's
> customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time
> limitations imposed by the client or the circumstances; (8) the amount involved in
> the case and the results obtained; (9) the experience, reputation, and ability of the

attorneys; (10) the  "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 184, 186 n.3 (citation omitted).  In addition, "[t]he actual billing arrangement" between the prevailing party and its counsel provides a "strong indication" of what is "reasonable."  *Crescent Publ'g*, 246 F.3d at 151.

### B.   The Hourly Rates of Girard's Attorneys Are Reasonable.

Girard's counsel, Mitchell Silberberg & Knupp LLP ("MSK"), has significant experience litigating copyright infringement matters, and Ms. Lackman, Girard's lead counsel, is a nationally-recognized copyright litigator with over two decades of relevant experience.  *See* Lackman Decl. ¶¶ 5, 7.  These are the actual hourly rates that MSK charged and Girard agreed to pay for the work performed in this case (*id.*, ¶¶ 5, 6), making them presumptively reasonable. *See Crescent Publ'g*, 246 F.3d at 151; *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC), 2006 WL 3498590, at *9 (S.D.N.Y. Dec. 4, 2006) (an "attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of" what constitutes a "reasonable" hourly rate) (citation omitted).

There is no reason to question the presumptive reasonableness of the agreed-upon hourly rates.  The hourly rates are at or below the current market rates for "lawyers [and paralegals] of reasonably comparable skill, experience, and reputation" at New York law firms, *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (citations omitted), and are well within the range of what other courts in this district have deemed to be "reasonable" in copyright cases.  *See, e.g., Charles v. Seinfeld*, No. 18-cv-1196 (AJN), 2022 WL 889162, at **4-5 (S.D.N.Y. Mar. 25, 2022) (courts in this district have found hourly rates ranging from $400 to $913 for partners, $200 to $575 for senior associates, and $150 to $200 for paralegals to be "reasonable" in copyright cases) (collecting cases); *Rock v. Enfants Riches Deprimes, LLC*, No. 17-cv-2618

(ALC), 2020 WL 468904, at **5-6 (S.D.N.Y. Jan. 29, 2020) (finding hourly rates of $740 for partner with twenty years of experience, $575 for senior litigation associate, $400 for associate with over five years of experience, and $150 to $200 for paralegals to be "reasonable" in a copyright case); *Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13 Civ. 2493 (KBF), 2014 WL 4792082, at *2 (S.D.N.Y. Sept. 24, 2014) ("In recent years, New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour . . . [and] for law firm associates in the range of $200 to $450 per hour.") (collecting cases); *see also Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 323 (S.D.N.Y. 2014) (in determining whether hourly rate is reasonable, "the court may consider rates approved in prior cases and the court's own knowledge of reasonable rates in the district") (citations omitted). As noted in the accompanying declaration, Ms. Lackman handled the entire motion on the expectation that the overall cost would be lower than using associates to get up to speed and draft arguments on issues with which they were unlikely to have as much familiarity. Lackman Decl., ¶ 8.

## C.   The Number of Hours Expended by Girard's Attorneys Is Reasonable.

The number of hours that Girard's counsel expended in this case also is reasonable. "In calculating the number of 'reasonable hours,' the court looks to 'its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (citation omitted). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Reiter v. Metro. Transp. Auth. of State of NY*, No. 01 Civ. 2762 (GWG), 2007 WL 2775144, at *9 (S.D.N.Y. Sept. 25, 2007) (citations omitted). Ultimately, since "attorney's fees are dependent on the unique facts of

each case, the resolution of this issue is committed to the discretion of the district court." *Clarke*, 960 F.2d at 1153 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)); *see also G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 436 (S.D.N.Y. 2012) ("it is less important that judges attain exactitude, than that they use their experience with the case") (citation omitted).

As detailed in the accompanying Lackman Declaration and contemporaneous time records, Girard seeks to recover fees attributable to a total of 29.9 hours of work performed in this case, from the inception of the case in May 2023 through the submission of the reply brief on October 2, 2023.  *See* Lackman Decl. ¶ 3, Ex. A; *Regulatory Fundamentals*, 2014 WL 4792082, at *2 ("An applicant for an award of attorney's fees generally must submit 'contemporaneous time records' that 'specify, for each attorney, the date, the hours expended, and the nature of the work done.'") (citation omitted).  These hours reflect necessary and non-redundant work done with respect to fruitless settlement negotiations and reviewing licensing materials, drafting an answer with detailed defenses, preparing a case management plan and joint letter, appearing at a scheduling conference in-person, and preparing an opening and reply brief with declarations pertaining to the successful Rule 12(c) motion.  *See* Lackman Decl. ¶¶ 2-3, 18 & Ex. A; *see Konangataa*, 2017 WL 4776981, at *3 (awarding $30,839.00 to defendant Coed Media Group, LLC on motion to dismiss on fair use grounds); *see also, e.g., Pyatt*, 2012 WL 1668248, at **7-8 (awarding $28,125 in attorney's fees to each defendant, finding such amount is reasonable for work done in connection with a motion to dismiss); *Melodrama Publ'g, LLC v. Santiago*, No. 12 Civ. 7380 (JSR) (FM), 2015 WL 2380521, at *6 (S.D.N.Y. May 19, 2015) ("there is no reason to second guess the approximately 177.5 hours of attorney time that the [f]irm billed in the period before" the court granted the plaintiff's motion for judgment on the

pleadings, i.e., from the commencement of the case in October 2012 through the decision in April 2013).

The result is that Girard seeks a total of $19,176.02 in attorney's fees for 29.9 hours of work, plus the additional fees incurred in preparing and defending this motion.  *See* Lackman Decl. ¶ 2, Ex. A.[11]  This is a very reasonable amount in the context of today's legal market in New York, especially for obtaining full success at an early stage, particularly in the factual scenario present here.  *See Farrar v. Hobby*, 506 U.S. 103, 103 (1992) ("The most critical factor in determining a fee award's reasonableness is the degree of success obtained . . . .") (citation omitted); *Hensley*, 461 U.S. at 435 ("Where a [prevailing party] has obtained excellent results, his attorney should recover a fully compensatory fee.").  Accordingly, Girard should be permitted to recover his attorney's fees in full.

## <u>CONCLUSION</u>

Accordingly, Girard respectfully requests that the Court award attorney's fees and costs in the full amount requested, plus the fees incurred for this Motion.

---

[11] Girard also seeks to recover the additional attorneys' fees incurred in bringing the instant motion.  Notably, this category of fees is recoverable.  *See Crown Awards, Inc. v. Disc. Trophy & Co.*, 564 F. Supp. 2d 290, 297 (S.D.N.Y. 2008) ("A fee award should usually include monies spent on the fee motion."), *aff'd*, 326 F. App'x 575 (2d Cir. 2009); *TufAmerica*, 2016 WL 1029553 at *7 (awarding an additional $27,302.60 in attorneys' fees for the time spent preparing application for costs and fees).  Girard will file a short supplemental submission as soon as practicable after this motion is fully briefed.

Respectfully submitted,

Dated: New York, New York          MITCHELL SILBERBERG & KNUPP LLP
       April 12, 2024


By:   /s/ Eleanor M. Lackman
      Eleanor M. Lackman (eml@msk.com)
      437 Madison Avenue, 25th Floor
      New York, New York 10022
      Tel.: (212) 509-3900
      Fax: (212) 509-7239

      *Attorneys for Defendants Girard
      Entertainment & Media LLC and Keith
      Girard*