**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AUGUST IMAGE, LLC; and MARK SELIGER, | Case No.: 1:23-cv-01492-VEC-RFT |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES** |
| v. | |
| GIRARD ENTERTAINMENT & MEDIA LLC; and KEITH GIRARD, | |
| Defendants. | |

## TABLE OF CONTENTS

I.   Introduction..................................................................................................1

II.   Background……………………………………………………………………………..1

III.   Legal Standard………………………………………………………………………4

IV.   An Award of Attorney's Fees is not Warranted……………………………………..5

    A.  Plaintiffs' Claims Were Not Objectively Unreasonable………………………..6

        1.  Plaintiffs' Position Was Factually Reasonable………………………….8

        2.  Plaintiffs' Position Was Legally Reasonable……………………………8

        3.  Defendants' Cited Authority Establishes That Plaintiffs' Claims
           Were Objectively Reasonable………………………………………10

    B.  Defendants Fail to Show That Plaintiffs' Position Was Objectively
      Unreasonable or Brought in Bad Faith………………………………………..12

        1.  Defendants, not Plaintiffs, have Mischaracterized the Facts and
           law…………………………………………………………………...12

           a.  Plaintiffs Did Not Mischaracterize the Facts…………………….13

           b.  Plaintiffs Did Not Misrepresent the Law………………………...14

        2.  Plaintiffs' Claims Were Not Meritless and Were Motivated by a
           Need to Protect Legitimate Licensing Markets for the Subject
           Photograph…………………………………………………………..17

    C.  Considerations of compensation and deterrence do not justify an award of
      fees……………………………………………………………………………..20

V.   Defendant's Requested Amount of Fees is Unreasonable………………………….24

VI.   Defendants' Motion Should Be Denied……………………………………………..25

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agence France Presse v. Morel,*

   2015 WL 13021413 (S.D.N.Y. Mar. 23, 2015) ...................................................................... 22

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,*

   143 S. Ct. 1258, 215 L. Ed. 2d 473 (2023) .......................................................................... 9

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith,*

   11 F.4th 26 (2d Cir. 2021) ................................................................................................. 23

*Aug. Image, LLC v. Girard Ent. & Media LLC,*

   2024 WL 1300254 (S.D.N.Y. Mar. 27, 2024) ...................................................................... 11

*Baker v. Urb. Outfitters, Inc.,*

   431 F. Supp. 2d 351 (S.D.N.Y. 2006) ................................................................................. 23

*Barcroft Media Ltd. v. Coed Media Group, LLC,*

   297 F.Supp.3d 339 (S.D.N.Y. 2017) .................................................................................. 16

*Beastie Boys v. Monster Energy Co.,*

   112 F. Supp. 3d 31 (S.D.N.Y. 2015) ............................................................................. 24, 25

*Bryant v. Media Right Prods., Inc.,*

   603 F.3d 135 (2d Cir. 2010) ............................................................................................... 5

*Campbell v. Acuff-Rose Music, Inc.,*

   510 U.S. 569 (1994) ........................................................................................................... 9

*Canal+ Image UK Ltd. v. Lutvak,*

   792 F. Supp. 2d 675 (S.D.N.Y. 2011) ................................................................................. 12

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES**

*Cariou v. Prince*,

714 F.3d 694 (2nd Cir. 2013) ................................................................. 7, 23

*Chivalry Film Productions v. NBC Universal, Inc.*,

2007 WL 4190793 (S.D.N.Y. Nov. 27, 2007).......................................... 12

*Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*,

2017 WL 3393850 (S.D.N.Y. Aug. 4, 2017)......................................... 9, 19

*Earth Flag Ltd. v. Alamo Flag Co.*,

154 F. Supp. 2d 663 (S.D.N.Y. 2001) ...................................................... 23

*Eisemann v. Greene*,

204 F.3d 393 (2d Cir. 2000) .............................................................. 17, 18

*Fogerty v. Fantasy, Inc.*,

510 U.S. 517, 114 S. Ct. 1023(1994) ....................................................... 21

*Golden v. Michael Grecco Prods.*, Inc.,

524 F. Supp. 3d 52 (E.D.N.Y. 2021) ........................................................ 21

*Harper & Row Publishers, Inc. v. Nation Enterprises*,

471 U.S. 539 (1985) ................................................................................... 5

*HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP*,

58 F. Supp. 3d 380 (S.D.N.Y. 2014) .......................................................... 7

*Kirtsaeng v. John Wiley & Sons, Inc.*,

136 S. Ct. 1979 (2016).......................................................................... 5, 6

*Knitwaves, Inc. v. Lollytogs* Ltd.,

71 F.3d 996 (2d Cir. 1995) ......................................................................... 4

*Lee v. Karaoke City*,

    2020 WL 5105176 (S.D.N.Y. Aug. 31, 2020)............................................................ 17

*Mahan v. RocNation, LLC*,

    2015 WL 4388885 (S.D.N.Y. July 17, 2015)........................................................... 11

*McGucken v. Newsweek LLC*,

    464 F. Supp. 3d 594 (S.D.N.Y. 2020) ............................................................. 3, 9, 10

*McGucken v. Pub Ocean, Ltd.*,

    42 F.4th 1149 (2022) ......................................................................................... 3, 6, 15

*Mulcahy v. Cheetah Learning, LLC*,

    386 F.3d 849 (8th Cir. 2004) ...................................................................................... 5

*New Earthshell Corp. v. Jobookit Holdings Ltd.*,

    2015 WL 2152681 (S.D.N.Y. May 7, 2015) ............................................................ 25

*Overseas Direct Imp. Co. v. Family Dollar Stores Inc.*,

    2013 WL 5988937 (S.D.N.Y. Nov. 12, 2013)........................................................... 7

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*,

    2004 WL 728878 (S.D.N.Y. Apr. 6, 2004) ................................................... 6, 7, 8, 12

*Porto v. Guirgis*,

    659 F.Supp.2d 597 (S.D.N.Y.2009) .................................................................... 7, 12

*Pyatt v. Raymond*,

    2012 WL 1668248 (S.D.N.Y. May 10, 2012) ......................................................... 11

*Rodriguez v. Klum*,

    2009 WL 73115 (S.D.N.Y. Jan. 8, 2009) ............................................................... 24

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES**

*Seltzer v. Green Day, Inc.*,

    725 F.3d 1170 (9th Cir. 2013) ........................................................................... 6

*Sierra Club v. United States Army Corps of Eng'rs*,

    776 F.2d 383 (2d Cir.1985) ............................................................................. 12

*Sony Corp. of Am. v. Universal City Studios, Inc.*,

    464 U.S. 417, 104 S.Ct. 774 (1984) ................................................................. 21

*TufAmerica Inc. v. Diamond*,

    2016 WL 1029553 (S.D.N.Y. Mar. 9, 2016) .................................................... 11

*Unicolors v. H&M*,

    595 U.S. 178 (2022) ........................................................................................... 3

*Walsh v. Townsquare Media, Inc.*,

    464 F. Supp. 3d 570 (S.D.N.Y. 2020) ................................................... 9, 15, 16

*Yang v. Mic Network, Inc.*,

    2020 WL 6562403 (S.D.N.Y. Nov. 9, 2020) ..................................................... 4

**Statutes**

17 U.S.C. 106 ........................................................................................................ 13

17 U.S.C. § 505 ....................................................................................................... 4

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES**

## I.      Introduction

To properly exercise its discretion to deny Defendants Girard Entertainment & Media LLC and Keith Girard's (collectively, "Defendants") motion for attorneys' fees ("Motion"), the Court need only answer two questions:

1.   Were August Image, LLC and Mark Seliger (collectively, "Plaintiffs")'s claims objectively unreasonable, frivolous, or clearly improperly motivated? and;

2.   Would it serve the purposes of the Copyright Act to force Plaintiffs to pay attorney's fees where there was a clear prima facie case of infringement, and the fact-specific fair use decision has no real precedential value to future cases?

The answer to both is certainly "no." Notwithstanding Defendants' rhetoric, the evidence in this case establishes that Plaintiffs brought this suit only to address the unauthorized use of a photograph of the cast of *Friends* to adorn an article that was not about that photograph, but rather about rumors of a *Friends* reboot show or special. These facts are sufficient to state a claim for copyright infringement and there is no evidence, let alone clear evidence, that Plaintiffs failed to duly consider fair use or were motivated by anything other than a desire to enforce their intellectual property rights as contemplated under the Copyright Act.

## II.     Background

August Image, LLC ("August") is an exclusive syndicator and licensing agent for top photographers exclusively responsible for licensing and distributing the photographs it syndicates and addressing the unauthorized distribution of those photographs. Mark Seliger ("Seliger")(collectively with August, "Plaintiffs") is an award-winning photographer and a client of August. In April of 1995 he shot the photograph of the cast of *Friends* which is at issue ("Subject Photograph") in this case for a *Rolling Stone* cover and by their agreement retained the

copyright in that image. In February of 2020 Seliger licensed the Subject Photograph to Burbank Television Enterprises for: "One time Instagram posts on the personal accounts of Jennifer Aniston, David Schwimmer, Courtney Cox, Matther Perry, Lisa Kudrow, Matt Leblanc[…] All other usage to be negotiated additionally."[1]

Defendants then used the Subject Photograph without authorization as the banner image (as it appeared on Instagram post by Schwimmer) for an article titled "Can Friends Reboot Count on Aging Fans to Rekindle Love of TV Show" ("Accused Article"). The Accused Article discussed a potential reboot of *Friends*. See Dkt. No. 43-1. Nowhere did the Accused Article comment on the Subject Photograph. Rather, it referenced an Instagram post by Schwimmer through a single sentence halfway through the article that read "Schwimmer, who played Ross, confirmed in an Instagram post that the cast had agreed on a 'Friends' special." Id. Notably, the reproduced Post featuring the Subject Photograph said nothing about a *Friends* special.

Before filing this action, Plaintiffs and their counsel considered fair use and were firmly of the opinion that the Accused Article did not make fair use of the Subject Photograph. Indeed, the prospect of a *Friends* special or reboot created a valuable licensing opportunity for Plaintiffs with any media sources that wanted to use the Subject Photograph as a visual aid to report on that news—as Defendants had done. Declaration of Mark Seliger ("Seliger Decl.") ¶¶5-6; Declaration of Lauren Kelly ("Kelly Decl.") ¶¶ 5-6.

And Plaintiffs' counsel are experts on fair use, having successfully addressed similar claims of fair use both in this district and across the country. For example, in *McGucken v. Newsweek,* Plaintiffs' counsel successfully established that the use of a photograph in an article

---

[1] Defendants claim in fn.6 that Plaintiffs never received a license fee for the use by the case. It is unclear what Defendants based this misrepresentation on as they support it without any citation. In any event, Defendants are wrong.

about the subject of that photograph, even with a small reference to the photograph, was not a

transformative fair use since the use of the image was "merely as an illustrative aid." 464 F.

Supp. 3d 594, 606 (S.D.N.Y. 2020). And in 2022, Plaintiff's counsel prevailed before the Ninth

Circuit in *McGucken v. Pub Ocean, Ltd*., 42 F.4th 1149, another important fair use case[2] that

Law360 listed as one of the six biggest copyright rulings of 2022.[3] Both named partners of

Doniger / Burroughs also wrote and filed amicus briefs to the Supreme Court addressing fair use

in *Warhol v. Goldsmith*, Stephen Doniger on behalf of American Photographic Artists, Getty

Image, and other trade groups,[4] and Scott Alan Burroughs on behalf of the National Society of

Entertainment and Arts Lawyers and others,[5] which advocated for the holding the Supreme Court

adopted.

Defendants are serial infringers playing victims. For just two examples, in *Creative*

*Photographers Inc. v. Girard Entertainment & Media LLC*, Defendants exploited 10 original

photographs without any authorization, and a related case pending between August and

Defendants concerns their unauthorized uses of more than 150 original photographs syndicated

by August for its artists clients[6]. Those were/are clear infringements, and the suggestion by

---

[2] In *Pub Ocean*, Plaintiffs' counsel established that a digital publisher's use of Dr. McGucken's
photos of an ephemeral lake in Death Lake, California, was not fair use even though the article
reported on that ephemeral lake and referenced Dr. McGucken's photographs as a source of
information about those lakes.

[3] See https://www.law360.com/articles/1556241/the-biggest-copyright-rulings-of-2022-.
Notably, two of the six "biggest copyright rulings" listed by Law360 were Doniger / Burroughs
cases, the other one being their US Supreme Court victory in *Unicolors v. H&M* (595 U.S. 178).

[4] See https://www.supremecourt.gov/DocketPDF/21/21-
869/233551/20220815163017218_ASMP_Goldsmith_Amicus%20Document%20August%2015
%202022%20EFile.pdf

[5] See https://www.supremecourt.gov/DocketPDF/21/21-
869/233541/20220815163511800_CSEL_Goldsmith_Amicus%20MAIN%20August%2015%20
2022%20EFile.pdf

[6] While the claims over a number of the over 150 photographs were ultimately dropped, this was
only due to certain potential issues of timeliness under the unique Second Circuit rules under the

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES**

Defendants' counsel that there is some nefarious motive by Plaintiffs and Doniger / Burroughs other than addressing that copyright infringement, a suggestion she now makes in the regular course of defending a multitude of infringers, crosses from zealous to irresponsible advocacy.

Based on the fact intensive nature of the fair use analysis and the holdings in similar cases like *Pub Ocean* and *Newsweek*, reasonable minds could and clearly did differ over whether this presents a case of fair use. Plaintiffs and their counsel acted in good faith based on a reasonable belief that Defendants' unauthorized use was not fair. Defendants' mudslinging and grandstanding about imagined threats to free speech are just that, and do not render Plaintiffs' attempts to enforce their rights under copyright objectively unreasonable or frivolous. This Motion should be denied.

## III.    Legal Standard

The Copyright Act provides courts discretion to award the prevailing party in an infringement action its costs, including reasonable attorney's fees. 17 U.S.C. § 505. But an award of fees and costs is not automatic; rather, the district court must determine whether such an assessment would be fair. *Yang v. Mic Network, Inc.*, 2020 WL 6562403, at *3 (S.D.N.Y. Nov. 9, 2020), aff'd, 2022 WL 906513 (2d Cir. Mar. 29, 2022), citing *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1011 (2d Cir. 1995) (emphasis added).

There is no "precise rule or formula for awarding fees," but the Supreme Court has provided guidance in considering fee requests. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016)(citation omitted). Courts should consider certain "nonexclusive" factors such as: "frivolousness, motivation, objective unreasonableness, and the need in particular

---

*Sohm* decision and/or a desire to streamline that litigation by dropping smaller claims without timely registration, not based on any indication that Defendants' extensive exploitation of the images was authorized or fair use.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES**

circumstances to advance considerations of compensation and deterrence." *Kirtsaeng*, 136 S. Ct. at 1986. And the court must "give substantial weight to the objective reasonableness of the losing party's position". Id. at 1983. Other factors may be considered "so long as [they] are faithful to the purposes of the Copyright Act." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir.2010). In this case, each of those factors weighs against an award of fees.

## IV.   An Award of Attorney's Fees is not Warranted

Defendants wrongly claim that this lawsuit was "not only meritless, it was implausible." Motion, p. 1. While Plaintiffs' claims were ultimately unsuccessful, they were not objectively unreasonable, frivolous, or improperly motivated. Rather, Plaintiffs sought relief after discovering that Defendants, who have a history of trampling on the copyrights that August syndicates, exploited the Subject Photograph on its commercial website in an article that made no comment on or criticism of the image but only appeared to use it as an illustrative aid. Plaintiffs considered fair use and concluded that the use at issue was not fair but rather precisely the type of use which would destroy a valuable licensing market if it were "fair use." Plaintiffs' motivation was thus nothing more and nothing less than to enforce the rights on which their livelihoods depend—as the Copyright Act encourages them to do.

Importantly, fair use is a mixed question of law and fact. *Mulcahy v. Cheetah Learning, LLC*, 386 F.3d 849, 855 (8th Cir. 2004); *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985). "For instance, 'how much of the copyrighted work was copied' is a factual question, *id.* at 1200, but which way in the fair use analysis that points in a particular case, and by how much, is a legal question." *Pub Ocean*, 42 F.4th at 1158. Thus, "[w]here no material, historical facts are at issue and the parties dispute only the ultimate conclusions to be

drawn from those facts, [the court] may draw those conclusions without usurping the function of the jury." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175 (9th Cir. 2013).

Thus, the Court's ruling in this case *does not* reflect that Plaintiffs' claims were meritless or implausible, just that Judge Caproni's balancing the fair use factors led her to conclude that the fair use defense applied. A different judge certainly could have found differently, and Plaintiffs have filed a notice of appeal because they believe the Second Circuit will reverse that finding of fair use just as it did in *Warhol v. Goldsmith,* 11.F.4th 26 (2nd Cir. 2021).

Defendants' motion for fees relies primarily on self-serving conjecture that Plaintiffs and their counsel are copyright trolls who brought this suit to bully and extort Defendants. These claims are nothing short of irresponsible, although they have become standard slander by a repeated infringer and counsel whose primary practice is to defend such accused infringers. They are a distraction from the facts, which establish that Plaintiffs' claims were tenable and not unreasonably or improperly motivated. Defendants' motion should be denied.

### A. Plaintiffs' Claims Were Not Objectively Unreasonable

The main goal of fee shifting under the Copyright Act is to promote the Act's purposes. See *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204 (2016). Thus, this motion is properly denied because "it will generally not promote the purposes of the Copyright Act to impose a fee award against a purported copyright holder when that copyright holder has not taken an objectively unreasonable litigation position." *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, No. 96 CIV.4126(RWS), 2004 WL 728878, at *5 (S.D.N.Y. Apr. 6, 2004).

Claims of copyright infringement are only objectively unreasonable where they are "clearly without merit or otherwise patently devoid of a legal or factual basis." *HarperCollins*

*Publishers LLC v. Open Rd. Integrated Media, LLP*, 58 F. Supp. 3d 380, 389 (S.D.N.Y. 2014), citing *Porto v. Guirgis*, 659 F.Supp.2d 597, 617 (S.D.N.Y.2009).

Importantly, a "lack of success on the merits, without more, does not establish that the non-prevailing party's position was objectively unreasonable." *Yang v. Mic Network, Inc.*, at *3, citing *Overseas Direct Imp. Co. v. Family Dollar Stores Inc.*, 2013 WL 5988937, at *2 (S.D.N.Y. Nov. 12, 2013). The pivotal question is thus "not whether there was a sufficient basis for judgment in favor of defendants, but whether the factual and legal support for plaintiff's position was so lacking as to render its claim ... objectively unreasonable." *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, No. 96 CIV.4126(RWS), 2004 WL 728878, at *3 (S.D.N.Y. Apr. 6, 2004)

Knowing this, Defendants and their counsel take great pains to paint Plaintiffs and their counsel as bad actors who have waged an unreasonable assault on fair use. But no part of that is true. Facts and relevant law supported Plaintiffs' claims and were only overcome after a case-specific analysis of the "fair use" factors. That this Court rendered judgment against Plaintiffs does not make their claims unreasonable.

Fair use is one of the most notoriously complicated questions to address in copyright law and courts regularly disagree regarding whether a use is "fair." Examples like *Cariou v. Prince*, 714 F.3d 694 (2nd Cir. 2013), in which the trial court found no fair use as a matter of law and then the Second Circuit reversed with a finding of fair use as a matter of law, and *Warhol v. Goldsmith,* 11. F.4th 26 (2nd Cir. 2021), where the opposite happened, prove that point. Fair use decisions are highly fact-specific such that there would be little deterrent value in awarding fees in this case, especially given the reasonableness of Plaintiffs' position.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES**

### 1.   Plaintiffs' Position Was Factually Reasonable

Plaintiffs filed this suit because Defendants used a 1992 photograph of the cast of *Friends*, initially licensed to Rolling Stone, as eye candy for an article about a potential *Friends* reboot. That article did not comment on, critique, or otherwise discuss the photograph, and was in no sense about the photograph. And while the article cryptically referenced an Instagram post by David Schwimmer, that post was not the focus of the article, and it remains unclear whether the referenced post is even the post that includes the (licensed) Subject Photograph. There was nothing unreasonable in Plaintiffs concluding that Defendants' use was not fair.

Where plaintiffs "owned a purportedly valid copyright, and the [defendant] publishes Plaintiffs' copyrighted material…[t]hese facts alone [are] enough to establish a prima facie case and support an objectively reasonable claim to protect that copyright." *Penguin Books.* 2004 WL 728878, at 3. Indeed, in *Penguin Books*, the court found an infringement claim on these facts was not unreasonable even where the defendant prevailed on an affirmative defense. Id. at 5.

Just so here. Seliger created and owns a valid copyright for the Subject Photograph, and August holds the exclusive rights of distribution in same. And Defendants published the Subject Photograph in the Accused Article without valid license. Thus, just as in *Penguin Books*, Plaintiffs advanced this suit based on facts sufficient to establish a *prima facie* case of infringement, and its claims were thus not objectively unreasonable, even where Defendants succeeded on an affirmative defense. Requiring Plaintiffs to pay Defendants' attorney's fees runs counter to the purposes of the Copyright Act, and Defendants' motion should be denied.

### 2.   Plaintiffs' Position Was Legally Reasonable

Similarly, a claim is not legally unreasonable merely because there "was a sufficient basis for judgment in favor of defendants," instead the "legal support for plaintiff's position" must be

"so lacking as to render its claim objectively unreasonable." See *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, No. 14-CV-9270 (RJS), 2017 WL 3393850, at *2 (S.D.N.Y. Aug. 4, 2017). Plaintiffs position was not devoid of legal support. Rather, relevant case law established significant support for Plaintiffs' position that Defendants' unauthorized use of the Subject Photograph was not fair.

Numerous decisions supported Plaintiffs position that using a copyrighted work in a news article "by no means guarantees a finding of fair use." *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 580 (S.D.N.Y. 2020). And where commentary or reporting in the article has "critical bearing" on the work, courts often decline to find fair use. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1261, 215 L. Ed. 2d 473 (2023); See also *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580, 114 S.Ct. 1164. Indeed, Plaintiffs set forth substantial legal support for their positions in the Opposition to Defendants' Motion for Judgment on the Pleadings. See Dkt. No. 44.

For one example, Plaintiffs maintain that *McGucken v. Newsweek* provides on-point support for its position. There, the photograph at issue depicted a natural phenomenon and the defendant used the photograph in an article reporting on that phenomenon, even incorporating "quotes from [p]laintiff about the taking of the photographs." 464 F. Supp. 3d 594, 606 (S.D.N.Y. 2020). Similarly to this case, the defendant in *Newsweek* claimed their infringement was fair use because it transformed the photograph from its original purpose into "news or commentary, however the Court held that "this draws too fine a distinction between the parties' uses," and declined to find fair use as a matter of law where the photograph itself was not the subject of the article at issue but rather the image was "merely an illustrative aid", and further found that despite the minimal direct references to the photograph in the article, "the mere

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES**

addition of some token commentary is not enough to transform the use of a photograph when that photograph is not itself the focus of the article." *Id*.

Based on *Newsweek*, and the other authority cited in their Opposition, Plaintiffs reasonably believed Defendants' use was not fair. The Accused Article did not focus on the Subject Photograph but rather on the potential reboot of *Friends*.

Defendants argue that Plaintiffs' authority was not on point because it was "obvious" that the use at issue was fair as commentary or reporting. Motion, p. 11. Defendants ground this conclusory argument in misrepresentation that Schwimmer's Instagram post used the Subject Photograph "in order to announce the return of a beloved television series," (Motion, p.10) when the post contains no such announcement. Indeed, the single sentence referring to an unspecified Instagram post, even if referring to the post containing the Subject Photograph, merely says "Schwimmer, who played Ross, confirmed in an Instagram post that the cast had agreed on a *Friends* special"—it does not reference the Subject Image and does not even appear in the commentary on the Instagram post shown in the article, which the Court can see in Exhibit 36-1 (Ex. A to the Girard Decl.). It thus appears that the post was only used to capture the photograph as a visual aid for the article—exactly what *Newsweek* says is not fair use.

Because on-point authority supported Plaintiffs' claims of actionable infringement, their claims were not objectively unreasonable. Defendants' Motion should be denied.

### 3.  Defendants' Cited Authority Establishes That Plaintiffs' Claims Were Objectively Reasonable

Defendants' Motion cites a long string of cases that they claim to be "more complex" than the present matter and that somehow justify fees. See Dkt. No. 50, fn. 4. But that authority is easily distinguishable and fails to justify their fee request. For example:

- In *Kanongataa v. Am,. Borad. Cos.*, the court dismissed and awarded fees where the defendant's infringement was expressly reporting on the existence of the video at issue, and also found that the defendant's actual use of the video was *de minimis* and they used only a "very small" portion of the original video. As discussed, Defendants' video here primarily reported on a reboot of *Friends*, not the existence of Seliger's photograph. And the Defendants here used the entirety of the Subject Photograph as a banner image, not a small portion.

- In *TufAmerica Inc. v. Diamond*, the court awarded fees where the plaintiff had no standing to bring a claim.[7] Here, Plaintiffs had proper standing to bring their suit as the owner of the Subject Photograph and the exclusive licensor and owner of the distribution right in same. Indeed, Judge Ramos recently confirmed this in another ongoing suit between August and Defendants. See *Aug. Image, LLC v. Girard Ent. & Media LLC*, No. 21-CV-9397 (ER), 2024 WL 1300254, at *4 (S.D.N.Y. Mar. 27, 2024).

- In *Mahan v. Roc. Nation*, the court awarded fees because plaintiff's claims were plainly time barred, as the plaintiff had filed suit more than 10 years after his claim had accrued.[8] Conversely, Plaintiffs' claim was timely filed.

- In *Pyatt v. Raymond*, the plaintiff filed a bad faith claim against 28 different defendants, basing his claim of infringement on a work the court found "shared no common elements" with the infringing work save for elements that were deemed not copyrightable as a matter of law.[9] In contrast, Plaintiffs brought suit for a use of an exact reproduction of the Subject Photograph.

- In *Porto v. Gurgis*, the court awarded fees where a plaintiff brought suit after being repeatedly warned by counsel that his suit, over facially unprotectable elements of a novel derived from the bible, was meritless. Here, there is no dispute that Plaintiffs' original photograph is protectable in its entirety.[10]

- In *Chivalry Film Prods. v. NBC Universal, Inc.*, concerned a claim of infringement over works "so extraordinarily different" that the plaintiff based his claim on the "absence of similarity," whereas Plaintiffs' claim was based on Defendants copying their exact photograph.[11]

These cases show that copyright claims are objectively unreasonable when they have no

true factual support, are against works which are obviously dissimilar, and that are plainly

---

[7] 2016 WL 1029553, at *2 (S.D.N.Y. Mar. 9, 2016), on reconsideration in part, 2018 WL 401510 (S.D.N.Y. Jan. 12, 2018).

[8] 2015 WL 4388885, at *2 (S.D.N.Y. July 17, 2015), aff'd, 634 F. App'x 329 (2d Cir. 2016).

[9] 2012 WL 1668248, at *3 (S.D.N.Y. May 10, 2012).

[10] 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009).

[11] 2007 WL 4190793, at *3 (S.D.N.Y. Nov. 27, 2007).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES**

untimely. In contrast, Plaintiffs timely filed suit for the unauthorized exploitation of an original

work in which they owned exclusive rights. Plaintiffs' suit was thus the kind of claim

contemplated and encouraged by the Copyright Act. Defendants' Motion should be denied.

### B.   Defendants Fail to Show That Plaintiffs' Position Was Objectively Unreasonable or Brought in Bad Faith

Courts often decline to award fees to a copyright defendant where they "[have] not

demonstrated that Plaintiffs' claim was so lacking in legal or factual support as to be objectively

unreasonable." *Penguin Books* 2004 WL 728878, at 3. Defendants fail to make such a showing.

And where a defendant seeks fees based on bad faith and improper motivation, "the

district court must find that the losing party's claim was (1) meritless; and (2) brought for

improper purposes such as harassment or delay." *Canal+ Image UK Ltd. v. Lutvak*, 792 F. Supp.

2d 675, 687 (S.D.N.Y. 2011). Fees based on bad faith require that <u>both</u> prongs be established,

"neither meritlessness alone nor improper purpose alone will suffice." Id., quoting *Sierra Club v.*

*United States Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir.1985).

Their rhetoric notwithstanding, Defendants fail to establish either that Plaintiffs' claims

were objectively unreasonable or brought in bad faith. Rather, the facts establish a *prima facie*

case of infringement with no evidence of any bad faith by Plaintiffs. Defendants' arguments,

which often trend toward *ad hominem* attacks, fail to establish that Plaintiffs' case was so lacking

in legal or factual support as to be objectively unreasonable, or so meritless and improperly

motivated as to be in bad faith. the Motion should be denied.

#### 1.   Defendants, not Plaintiffs, have Mischaracterized the Facts and Law.

The facts establishing Plaintiffs' claims are straightforward: Plaintiffs own exclusive

rights in the Subject Photograph under 17 U.S.C. 106 and Defendants exploited that Subject

Photograph without authorization from Plaintiffs. Only Defendants' fact-intensive affirmative defense prevented a finding of infringement. Now, in their bid to inequitably recover fees in this case Defendants assert that Plaintiffs mischaracterized and misrepresented the facts and law at issue. These claims are not only baseless, but they are also hypocritical.

### a. Plaintiffs Did Not Mischaracterize the Facts

Defendants begin with the demonstrably false assertion that Plaintiffs "claimed they owned rights in the entire Instagram post," rather than just the Subject Photograph. Motion, p. 9. Plaintiffs' operative complaint identifies the Subject Photograph as the work infringed and contrasts it directly against a screenshot of the image as used in the article at issue. See Dkt. No. 11, p. 4. Plaintiffs never claimed or suggested that they owned Schwimmer's post. Similarly, Plaintiffs' opposition to the motion for judgment on the pleadings, explained that "Defendants copied the entirety of the Subject Photograph from a proper licensee's Instagram post and used it on their commercial website as the banner image." Dkt. No. 44, pgs. 3, 17 (emphasis added). It is thus Defendants, not Plaintiffs, who are attempting to sew confusion between ownership of the Subject Photograph and ownership of the Instagram post.

Defendants next argue that Plaintiffs improperly cropped the use in the Accused Article to obscure the allegedly transformative commentary, again mischaracterizing the facts. Motion, p. 10. Plaintiffs' operative complaint provides a side-by-side comparison of the Subject Photograph and its appearance in the Accused Article, as well as a direct link to the full Accused Article on Defendants' website. See Dkt. No. 11, p. 4. And the commentary Defendants claim Plaintiffs sought to "obscure" appears on approximately the second page of the Accused Article, well below the Subject Photograph. Defendants' claim of "misrepresented facts" amounts to nothing more than (1) a gripe that Plaintiffs did not include the full Accused Article on the face

of their complaint, and (2) deliberately misled the Court about the contents of that article. Again, it is Defendants and not Plaintiffs misrepresenting the facts.

### b. Plaintiffs Did Not Misrepresent the Law

Defendants suggest that Plaintiffs "mispresented the law" by (1) failing to address certain authority on fair use and (2) suggesting that open factual questions made a finding of fair use at this stage inappropriate. In essence, Defendants argue that it was objectively unreasonable for Plaintiffs to find Defendants' authority factually distinguishable (it is) and find different authority to be more on point.

Defendants argue that Plaintiffs improperly failed to address fair use cases where "the use of the photograph is a newsworthy event." (Motion p.10). But Schwimmer's use of the Subject Photograph in his Instagram post *was not* the focus of the Accused Article, nor the newsworthy event being reported on, to be sure the post does not even expressly state that a reboot of *Friends* is confirmed.[12] Plaintiffs thus maintain that the cases relied on by Defendants are off point.

Defendants then claim that Plaintiffs' citation of *McGucken v. Pub Ocean* was somehow "dangerous" or improper, but that authority is squarely on point notwithstanding Defendants' mischaracterization of its facts and holding. Defendants misrepresent *Pub Ocean* as concerning "a stock image of a nature scene, which the defendant there used purely for decorative purposes." In fact, Dr. McGucken had taken photographs of ephemeral lakes in Death Valley, California and the offending article incorporated those photographs from Dr. McGucken's Instagram post to report on those lakes, and even discussed "how McGucken came to photograph the phenomenon." *Pub Ocean Ltd.*, 42 F.4th at 1154. Despite this, the court in *Pub Ocean* held

---

[12] In the context of the offending article, the words "It's happening" may appear to refer to something related to the show, but whether that thing is a new series, a full-length feature film, a *Friends* convention, or something else is entirely unclear.

that the use was not transformative and thus not fair because "[t]here [was] at most a loose topical connection between each portion of the article and the photos that appear[ed] alongside it," and the article did not "directly describe or engage with the photos." *Id.* at 1159.

Just so here. Defendants incorporated the Subject Photograph, as depicted in an Instagram post, into an article discussing a loosely connected topic and, despite potentially referencing the Instagram post in question, did not directly describe or engage with the Subject Photograph. *Pub Ocean* is thus reasonably analogous to this matter, and Plaintiffs did not in any way "misrepresent the law" when citing to *Pub Ocean*.

Nor did Plaintiffs misrepresent the law by citing *Walsh*. The Court in *Walsh* supported the proposition that fair use exists where "the copyrighted work its itself the subject of the story," and similarly found fair use where the Instagram post containing the photograph at issue was the subject of the article. *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 581–83 (S.D.N.Y. 2020), citing *Barcroft Media Ltd. v. Coed Media Group, LLC*, 297 F.Supp.3d 339, 352. And in citing *Walsh*, Plaintiffs noted that, unlike in *Walsh*, "the Subject Photograph was not the subject of [Defendants'] infringing article, nor was the Instagram post it appeared in." Dkt. No. 44, pgs. 8-9. Plaintiffs thus reasonably believed—and still believe—that *Walsh* supports its positions.

Even Defendants would have to admit that anyone reporting on a *Friends* reboot cannot freely use the Subject Photograph as part of that reporting simply because it appears on Mr. Schwimmer's Instagram page. Indeed, if it were otherwise then the terms of Seliger's license ("One time Instagram posts… All other usage to be negotiated additionally") are meaningless and his right to earn a living from further licenses for his image is seriously compromised. Standing up against this market harm on the belief that this is not the law is not unreasonable.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES**

Defendants' claim that Plaintiffs "misrepresented the law regarding the Court's ability to decide the motion at the pleadings state" is similarly false. As noted above, fair use is a mixed question of law and fact, and it is inappropriate for courts to decide fair use as a matter of law where there are open material questions of fact. Plaintiffs' (correct) position that a finding of fair use by the Court would be improper if there was an open question as to whether Schwimmer Instagram post referenced in the Accused Article was the post containing the Subject Photograph accurately reflects the law. Indeed, Plaintiffs accurately cited that courts grant 12(c) motions "'[w]here no material, historical facts are at issue and the parties dispute only the ultimate conclusions to be drawn from those facts.'" Dkt. No. 44, p. 4. They then logically applied these standards to conclude that fair use should be found on the pleadings where there no material questions of fact remain, and the ultimate conclusions drawn from those facts, with all inferences taken in favor of the non-movant, established fair use. See Id. This is nothing more than citation to authority establishing a standard and applying that standard to the case at hand. Defendants' claim that this is a misrepresentation of law to the Court is thus facially untrue.

Relatedly, Plaintiffs did not deny that the Court could decide fair use on the pleadings (so long as the relevant facts were not in dispute). They merely (again, correctly) noted the "dearth" of cases deciding fair use under the 12(b)(6) standard because fair use is a "fact-driven" affirmative defense which often cannot be decided on the pleadings. See Dkt. No. 44, p. 3, quoting *Lee v. Karaoke City*, No. 18 CIV. 3895 (PAE), 2020 WL 5105176, at *9 (S.D.N.Y. Aug. 31, 2020).

Defendants' claims that Plaintiffs misrepresented the law reveal more about Defendants' credibility than Plaintiffs'. Ultimately, Defendants fail to establish that Plaintiffs' positions were so devoid of legal support as to be objectively unreasonable, and their motion should be denied.

## 2. Plaintiffs' Claims Were Not Meritless and Were Motivated by a Need to Protect Legitimate Licensing Markets for the Subject Photograph.

Defendants cannot establish that Plaintiffs' claims were either meritless or improperly motivated, but *both* are required for an award of fees based on bad faith. Here, there is no evidence that Plaintiffs' claims were entirely without color or made for any improper purpose, and Defendants provide nothing more than distortions of fact and bare speculation, bordering on conspiracy theory, as to Plaintiffs' motivations to justify a finding of bad faith. These claims are insufficient and improper, and Defendants' motion should be denied.

Courts have interpreted bad-faith and improper motivation for attorney's fees "restrictively" so that they will "not deter persons with colorable claims from pursuing those claims." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000). Thus, the Court should not award attorneys' fees for bad faith "absent both clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purpose." Id. at 396.

As noted above, Plaintiffs easily established the elements of copyright infringement: exclusive copyright rights in the Subject Photograph and Defendants' unauthorized copying of that work. And Plaintiffs had every reason to believe that the potential *Friends* reboot created a valuable licensing market for the Subject Photograph such that there was potential market harm, and (as discussed above) that the use at issue was not fair. There is nothing about the filing of this case that suggests anything but a *bona fide* desire to protect the Subject Photograph.[13] Just

---

[13] Defendants complain on that the Plaintiffs filed this case without notice. Motion, p. 16. But the post at issue was from February of 2020, such that by February of 2023 Plaintiffs had to file it, given the 3-year statute of limitations and the Second Circuit's holding in *Sohm*. And Plaintiffs' election to focus on the facts of this case instead of Defendants' inaccurate representations regarding other infringement claims against it should not be taken as any kind of admission that those claims have merit.

because this Court found that Defendants' use was fair does not mean that reasonable minds could not reach a different finding. Plaintiffs' claims were thus not meritless.

Yet Defendants, based on nothing more than self-serving conjecture and misrepresentation of facts,[14] implore the Court to speculate that this case is part of a scheme to extort Defendants for money. For example, Defendants attempt to distort the events surrounding the mediation to create evidence of malicious intent. Specifically, Defendants claim that Plaintiffs concealed relevant information, allege that Seliger refused to cooperate with mediation to obtain a high payout, and baselessly accuse Plaintiffs and their counsel of being copyright trolls. None of this is true.

First, Plaintiffs produced actual bona fide, paid licensing invoices, albeit mistakenly providing the invoices it sent to its licensing agent (for its portion of those licensing fees) rather than the full license amounts (which records it did not seem to have in its possession). Defendants' counsel is either innocently mistaken or willfully misrepresenting that she was told that Plaintiffs' license invoices "were never actually paid" and that anything was "concealed" from them. Declaration of Stephen Doniger ("Doniger Decl.") ¶ 3. Ironically, Plaintiffs' mistake only undervalued their claims—which is entirely inconsistent with Defendants' assertion that Plaintiffs were trying to unreasonably inflate those claims.

Second, Seliger did not unilaterally refuse to participate in mediation to somehow secure a higher settlement. Rather, owing to an assignment abroad he offered to either send a representative with full decision-making authority or reschedule the session. See Dkt. No. 51-2, p. 7. Defendants objected and so he made himself available.

---

[14] This includes factual assertions about other cases and collateral matters not properly before this Court which Plaintiffs deny and do not address because it would be improper to do so.

Perhaps knowing that none of this is evidence of improper motivation, Defendants then repeat the "copyright troll" mantra, a common refrain from Defendants' counsel when representing infringers. But copyright trolls are those who are "more focused on the business of litigation than on selling a product or serving or licensing their [copyright] to third parties." *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, No. 14-CV-9270 (RJS), 2017 WL 3393850, at *4 (S.D.N.Y. Aug. 4, 2017)(refusing to find that a "long running music publisher— known for owning the soundtracks of classic Italian films" was a copyright troll). August is a well-established and well-respected licensing and syndication agency that works with top-tier photographers, including Seliger, an acclaimed professional photographer who has been actively creating and licensing his work for decades and has been featured in major publications such as *Conde Nast*, *GQ*, and *Vanity Fair* and had photographs featured in renowned institutions such as the Smithsonian National Portrait Gallery and the National Portrait Gallery in London. Seliger Decl. ¶ 3. August and Seliger are not in the business of litigation, they are the business of creating and licensing top-tier photographs.

It is, of course, true that Plaintiffs have filed other copyright lawsuits. But there is nothing surprising in a renowned photographer with decades of high-profile work in his portfolio and a top-tier Agency having to pursue copyright infringement over the years. More telling is that neither has ever had a finding that they brought a claim lacking in merit, let alone that they have failed to fairly consider fair use. Those filings thus provide no evidence of improper motivation.

Nor can Plaintiffs' counsel, Doniger / Burroughs, reasonably be called "copyright trolls." Indeed, other than a handful of attorneys like Ms. Lackman who regularly represent infringers, Plaintiffs' counsel is highly regarded in the industry. Doniger Decl. ¶ 5. Last year undersigned counsel, Stephen Doniger, was honored by the IP Law Section of the California Lawyers'

Association with its 2023 Vanguard Award which honors "outstanding legal professionals... for their contributions to the advancement of intellectual property law." Doniger Decl. ¶ 6. And Scott Alan Burroughs has been similarly recognized, including Billboard Magazine naming him a Top Music Lawyers of 2024. Doniger Decl. ¶ 7. With such experience in and respect for the creative world and its legal representation, no reasonable professional could paint them as engaged in a trolling scheme.

Finally, Defendants claim that Plaintiffs "threatened" Defendants with unreasonably high settlement demands as evidence of improper motivation, but these claims cannot be well taken. Defendants make much of Plaintiff "seeking," up to $150,000 in statutory damages, however Plaintiffs never made any such demand (but only accurately recited in their operative complaint that an infringer may be liable for "statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to $150,000.00 per infringement." Dkt. No. 11, ¶ 22.). See Motion pgs. 17. Rather, Plaintiffs consistently made settlement demands for a fraction of this amount, including a demand of $2,000 prior to Defendants filing their motion for judgment on the pleadings. In contrast, Defendants never made an offer in the four-figures. Doniger Decl. ¶ 8.

…

Plaintiffs' claims were not meritless or brought with any improper motive. Filing on and attempting to settle an unauthorized use of the Subject Photograph is no villainous act of extortion that needs to be discouraged. Defendants' contrary arguments are rich on rhetoric but ultimately offer no compelling justification to award fees. This motion should be denied.

### C.  Considerations of compensation and deterrence do not justify an award of fees

Considerations of compensation and deterrence similarly do not support an award of fees and costs because it will not serve the purposes of the Copyright Act to deter copyright owners like Plaintiffs from pursuing similar *prima facie* cases of infringement.

Considerations of compensation and deterrence favor a finding of fees where requiring payment of fees would be "faithful to the purposes of the Copyright Act,." *Golden v. Michael Grecco Prods.*, Inc., 524 F. Supp. 3d 52, 67 (E.D.N.Y. 2021). The purpose of the Copyright Act is to promote the progress of the arts. Indeed, "the monopoly privileges that Congress has authorized, while 'intended to motivate the creative activity of authors and inventors by the provision of a special reward,' are limited in nature and must ultimately serve the public good." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526, 114 S. Ct. 1023, 1029(1994), quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429, 104 S.Ct. 774 (1984)).

For fear of chilling the enforcement of rights, "district courts are disinclined to award fees in cases that are close calls, or which present novel legal issues or theories." *Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2015 WL 13021413, at *2 (S.D.N.Y. Mar. 23, 2015), aff'd sub nom. *Presse v. Morel*, 645 F. App'x 86 (2d Cir. 2016). Thus, where a case turns on the balancing of factors upon which reasonable minds could have differed, fees are generally not warranted.

This is such a case. Plaintiffs' claims were only overcome on a question of law that could have been differently decided.

It is certainly not the law that where a cast member of a show posts a photograph of the cast to their Instagram page pursuant to a license from the photographer, anyone is then free to use that photograph in articles about the show. On the other hand, if it were evident that the article at issue was truly about the use of the Subject Photograph on Schwimmer's Instagram,

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES**

Plaintiffs likely would not have filed this suit. Unfortunately, this case arises somewhere between those poles. Again, there is a passing reference in the Accused Article to Schwimmer's Instagram, but it is unclear whether that reference relates to the post in which the Subject Photograph appears, and it certainly does not refer to or discuss the Subject Photograph, nor does the article focus on the Instagram post itself.

Plaintiffs continue to believe that this is not fair use. But even if it is not, the ruling in this case sends no clear message to the public. Fair use will still need to be addressed on a case-by-case basis. Some claims will clearly be fair use, others will clearly not be, and still others will be up to the discretion of the court. Thus, this is precisely the kind of close call on a complex issue for which considerations of compensation and deterrence do not support an award of fees.[15]

Despite this, Defendants argue that fees are necessary to deter copyright owners like Plaintiffs "from pursuing similarly meritless and overaggressive assertions of copyright claims," but Plaintiffs' claims were neither meritless nor overaggressive. Rather, copyright claims are meritless such that fees are warranted where the plaintiff "forced [the defendant] to defend against …a baseless action," based on "unreasonable allegations." *Baker v. Urb. Outfitters, Inc.*, 431 F. Supp. 2d 351, 360 (S.D.N.Y. 2006), aff'd, 249 F. App'x 845 (2d Cir. 2007).

Not so here. Plaintiffs filed suit over a valid copyright in an original work they owned rights in, and Defendants unquestionably exploited that work without authorization. Indeed, even Defendants' cited authority only emphasizes that this is <u>not</u> the kind of objectively unreasonable or frivolous suit that should be deterred.

---

[15] Indeed, consider how many fair use rulings have been reversed. See *Cariou v. Prince*, 714 F.3d 694, 712 (2d Cir. 2013) and *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 54 (2d Cir. 2021), aff'd sub nom. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 143 S. Ct. 1258, 215 L. Ed. 2d 473 (2023) for just two examples.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES**

For example, the court in *Earth Flag Ltd,* found that considerations of deterrence warranted fees because it "was unreasonable by any standard" for the plaintiff to believe their work was subject to copyright protection because it was nothing more than a public domain picture of the Earth printed onto a flag. *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 667 (S.D.N.Y. 2001). Here, the Subject Photograph is not in the public domain and is clearly a creative work capable of sustaining a suit for copyright infringement.

And in *Rodriguez v. Kulm*, the court found that an award of fees would advance considerations of compensation and deterrence where it was "abundantly clear that Defendants had independently created [their work] prior to the time Plaintiffs claim Defendants had access to Plaintiff's [work]" such that there could be no rational claim of unlawful copying. No. 05 CV 10218 LAP, 2009 WL 73115, at *2 (S.D.N.Y. Jan. 8, 2009). Not so here, as it is beyond dispute that Seliger created the Subject Photograph and Defendants simply copied it from Instagram.

These cases show that considerations of compensation and deterrence favor defendants where a plaintiff's claims are so plainly meritless that they cannot establish the essential elements of copyright infringement. Not where the plaintiff filed suit over a *prima facie* case of copyright infringement, as Plaintiffs have. An award of fees will only deter copyright owners from bringing similarly reasonable claims, and this motion should be denied.

Defendants imagine that Plaintiffs "sue indiscriminately over every image they see whether or not a fair use or defense applies." Motion, p. 20. There is no truth to that claim. In fact, August and Seliger choose not to pursue many claims for unauthorized uses of their works for many reasons, including consideration of fair use. See Seliger Decl.¶ 5; Kelly Decl.¶ 5.

An award of fees would be counter-productive to the purposes of the Act as it would deter copyright owners from pursuing similarly valid claims where all the essential elements of

infringement are plain on the fear that a fact sensitive and complex question could be decided against them. Defendants' Motion should be denied.

## V.      Defendant's Requested Amount of Fees is Unreasonable

Where, like here, fees are sought on a fee-shifting application "the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending. The test is whether the movant "spen[t] the minimum necessary to litigate the case effectively." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 52 (S.D.N.Y. 2015)(collecting cases).

Here, Defendants seek $19,176.02 in attorneys' fees, but this amount is unreasonable and cannot reflect the "minimum necessary to litigate this case effectively" because it was billed almost entirely by a partner. It is settled that "there is ample authority in this District, applying the standard of objective reasonableness, for reducing a fee award where the legal hours recorded by plaintiffs' counsel fell unusually heavily on partners with high hourly rates." *Beastie Boys* at 53 (collecting cases); see also *New Earthshell Corp. v. Jobookit Holdings Ltd.*, No. 14-CV-3602 JMF, 2015 WL 2152681, at *2 (S.D.N.Y. May 7, 2015), vacated and remanded, 634 F. App'x 44 (2d Cir. 2015)("[i]t is well established that a failure to delegate work to junior, less expensive attorneys may be grounds for reducing an award of attorney's fees").

The court in *Beastie Boys* found "a material reduction in the requested fee award [was] merited to reflect the unusually partner-intensive nature of [counsel's] work," where "tasks carried out by partners surely could have been delegated to associates." 112 F. Supp. 3d at 52-53.

Exactly such a reduction for unnecessarily partner-intensive work is warranted here. Virtually all of the claimed hours are by Ms. Lackman, a partner at Mitchell Silberberg & Knupp LLP with an hourly rate of $725. See **Exhibit A** to Declaration of Eleanor Lackman. This

includes significant hours spent on tasks that were plainly delegable to less expensive associates such as drafting correspondence, coordinating with librarians, checking citations and tables, and research related to the motions at issue. See *Id*. And Ms. Lackman's only explanation for billing all the work in this matter is that "getting other lawyers familiar" with this case would have somehow been more expensive, despite Defendants and counsel repeatedly opining that the outcome of this case was "obvious" to anyone with basic copyright knowledge. See Declaration of Eleanor Lackman, ¶ 8. This unsupported speculation does not justify Ms. Lackman's failure to delegate virtually <u>any</u> tasks to less expensive associates or staff.

Per the objective standard of reasonableness for fee shifting, it is irrelevant whether Defendants agreed to have a partner handle this whole case. Defendants' counsels' billings are needlessly partner-intensive even where tasks could easily have been delegated to associates. If this this Court elects to award fees to Defendants, a material reduction in those fees is merited.

## VI.   Defendants' Motion Should Be Denied

Plaintiffs colorable claim for copyright infringement was dismissed by the Court based on the conclusion of Judge Caproni that, on balance, the fair use factors were satisfied. That Defendants prevailed on a fact-driven affirmative defense does not mean Plaintiffs acted unreasonably or had any improper motivation, notwithstanding Defendants' self-serving conjecture and vilification of Plaintiffs and their counsel. Because the purposes of the Copyright Act will not be served by forcing Plaintiffs to pay attorney's fees and costs for bringing a colorable claim of infringement in good faith, Defendants' Motion should be denied.

Respectfully submitted,

Date: <u>April 26, 2024</u>                                                         */s/ Stephen M. Doniger*

Los Angeles, California

Stephen M. Doniger, Esq.
Scott Alan Burroughs, Esq,
David Michael Stuart Jenkins, Esq.
DONIGER / BURROUGHS
247 Water Street, First Floor
New York, New York 10038
(310) 590-1820
stephen@donigerlawfirm.com
scott@donigerlawfirm.com
djenkins@donigerlawfirm.com

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES**