UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AUGUST IMAGE, LLC and MARK
SELIGER,

          Plaintiffs,

v.

GIRARD ENTERTAINMENT & MEDIA
LLC and KEITH GIRARD,

          Defendants.

Case No.   23-CV-1492 (VEC)(RFT)

---

# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF THEIR MOTION FOR ATTORNEY'S FEES

MITCHELL SILBERBERG & KNUPP LLP

Eleanor M. Lackman (eml@msk.com)
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Defendants Girard Entertainment
& Media LLC and Keith Girard*

## PRELIMINARY STATEMENT

In response to defendants Girard Entertainment & Media and Keith Girard's (collectively, "Girard") motion in support of fees, and in a case where they narrowly avoided a sanctions order,[1] plaintiffs August Image LLC's ("August Image") and Mark Seliger (collectively, "Plaintiffs") come out swinging with not a measured argument on the elements, but self-promotion and unrestrained *ad hominem* attacks on Girard and his counsel. They insist, yet again, that Girard took the Image at issue out of an Instagram post, using the Image alone, when that is simply not true. They claim that the Article at issue did not relate to the Instagram post, when the text of the Article includes: "Schwimmer, who played Ross, ***confirmed in an Instagram post*** that the cast had agreed on a 'Friends' special. TV suits are now talking about a 12-part series set to air in 2021." (emphasis added). They deflect from their prior arguments with off-point and incorrect representations of the law, essentially rearguing what they lost, and they even misrepresent the standard for fee awards. Despite the claim being thrown out on a Rule 12 test, they insist that the claim was not found to be implausible or meritless. And, not to be outdone, they even accuse Girard's counsel of doing work that the bills show a paralegal did.

Plaintiffs' opposition demonstrates, if anything, the dogged determination of Plaintiffs to snuff out any incentive to fight against meritless claims, even when the Copyright Act's purposes are served by doing so. Plaintiffs skewer Girard for failing to take a settlement offer of ***four times*** the highest amount Seliger ever demonstrated for an editorial license for the Image—to a much bigger publisher for more rights. They do not deny that they demanded ***36 times*** that amount in mediation and ***300 times*** that amount in their Complaint, and yet they clutch their pearls over a case citation that uses the term "troll," unleashing a tirade of disparagement on

---

[1] *See* ECF No. 47 at 11.

1

parties who won the case and were charged to argue bad faith in a fees motion. Plaintiffs do not rebut the evidence of motive nor give any consideration to the fact that fair use is a viable defense in the Copyright Act; they argue instead they need not consider it when filing suit.

Girard successfully stood up against Plaintiffs' efforts to chill speech and profit from a fair use, and not in a novel case, but in one that has the same fact pattern that has appeared repeatedly in this District and elsewhere, and which have led to fees awards without hesitation. Plaintiffs never distinguished those cases and fail to do so now. Like there, here a defendant served the purposes of the Copyright Act by securing for writers the assurances that they will not have to spend money on lawyers while facing demands for $18,000 for $250-worth of use in a context where the market value for a fair use is $0. As the Supreme Court has espoused, and as judges in this District have confirmed, the Copyright Act encourages fee awards in this context. The unreasonableness of Plaintiffs' litigating positions—replete with deflection and incivility even here—only underscores the appropriateness of such an award in this case.

## ARGUMENT

### I.     THE OPPOSITION ECHOES THE REASONS TO AWARD FEES

#### A.     Plaintiffs' Opposition Doubles Down on Objectively Unreasonable, Meritless Factual and Legal Arguments.

Plaintiffs' opposition is a case study in lawyer aggression above common sense, legal principles, the plain facts, and recognition of the law. As Girard puts forth arguments on objective unreasonableness, Plaintiffs respond with more rhetoric—which ends up backfiring. Girard will briefly address the many examples contained within Plaintiffs' briefing.[2]

*First*, Plaintiffs sought to create confusion by misrepresenting the facts. *See* Moving Br.

---

[2] The recitation in Plaintiffs' single-spaced block of cases only manages to confirm the flexibility and extent of situations in which a fee award is appropriate. Opp. Br. at 11.

at 9-10. Plaintiffs try to distance themselves from their sleight-of-hand with the facts but end up underscoring what they did.  Nobody could dispute that Defendants used an Instagram post—that is, except for Plaintiffs, baselessly. *See, e.g.*, Opp. Br. at 1 ("unauthorized use of a photograph of the cast of *Friends* to adorn an article"); 2 ("Defendants then used the Subject Photograph . . . as the banner image" . . . [N]owhere did the Accused Article comment on the Subject Photograph."); 5 (alleging Girard "appeared to use [the Image] as an illustrative aid"); 13 (Girard "copied the entirety of the Subject Photograph ***from*** a proper licensee's Instagram post and used ***it*** [i.e., the photograph taken out of the Instagram post, and not the post itself]. . .") (underscore in original; emphases added). Their backtracking on the context aside (*see* Opp. Br. 13), Plaintiffs' obstinate refusal to distinguish between taking an image simply for editorial use, and a very different use—namely, commenting on a combined post that happens to include the Image—ignores a critical, outcome-determinative point. *See* ECF No. 47 at 2, 6-7; Moving Br. at, *e.g.*, 14 n.8. Plaintiffs fail to explain how (much less allege that) Girard could have discussed the post without showing the post itself.[3]

Plaintiffs also say the Article only "cryptically referenced" an Instagram post and that there was no reference to the series or special. Opp. Br. at 8. But yet, just like the post itself, the reference is right there in the Article: "Schwimmer, who played Ross, ***confirmed in an Instagram post*** that the cast had agreed on a 'Friends' special. TV suits are now talking about a 12-part series set to air in 2021." (emphasis added). If expressly mentioning it is "cryptic" then the Article itself left no doubt. Titled "Can Friends Reboot Count on Aging Fans to Rekindle Love of TV Show?," it is roughly 40 sentences long and discusses the news that the show was to

---

[3] Plaintiffs harp on the idea that a use of a composited Instagram post must comment on the post **and** the image itself, but as was undisputed previously, commentary on the original is not required. In any case, the argument that there must be specific discussion of every element of a composited work is not supported.

be relaunched in 2021, nearly 17 years after the program went off the air, and points to the fact that one of the stars had doubts about the reboot but confirmed via social media (which was nascent in the heyday of the show)—*i.e.*, in the Instagram post—that the show was returning.

*Second*, Plaintiffs spend much ink on trying to reargue the case on the merits, but with a strange twist. Plaintiffs boast: "Plaintiffs' counsel are experts on fair use," Opp. Br. at 2, making it all the clearer that Plaintiffs must have been aware of the law against them when they sued. They also should have been aware that the two successes they trumpet (at 2-3 & 9, 14-15), like the other cases they cited, involve facts that have ***nothing*** to do with reporting on any social media post, or any other use of a photograph by a third party to make a point, where that action itself was newsworthy.[4] Indeed, Plaintiffs do not even deny that they misrepresented the one on-point case (which, like here, was not a "close call") that they bothered to mention. *See* Moving Br. at 12. Instead, they repeat the misrepresentation. Opp. Br. at 15 (misciting *Walsh*).[5]

*Third*, not satisfied with the failed arguments they made before, Plaintiffs claim (at 2) they considered fair use, but then they admit (at 17 n.13) they were rushed to file suit. But no matter: according to Plaintiffs, all they needed to do was allege the elements of the claim, and that would give Plaintiffs a "prima facie" case; in turn, according to them, the case cannot be objectively unreasonable. Opp. Br. at 8. This boils down to saying that, they would have defeated

---

[4] They do claim that Girard said it was "dangerous" to cite one of the cases, which—of course—is not *at all* what the motion said, and notably, Plaintiffs include no citation therefor. Girard's overall concern is very clear.

[5] Plaintiffs' counsel's boasts about their Supreme Court experience or peer rankings also does not help their cause. The holding in the appropriation-art case (like *Cariou*), not involving a use in the preamble of Section 107, did not adopt the arguments in the amicus briefs filed by counsel but rather was more consistent with the position taken in the amicus brief filed by Girard's counsel, on behalf of creators, noting, *inter alia*, the importance of fair use to creativity. *See Andy Warhol Foundation*, *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1274 (2023) (purposes in preamble "reflect the sorts of copying that courts and Congress most commonly have found to be fair uses . . . .") (cleaned up). Further, on the papers in *Unicolors v. H&M*, Plaintiffs' counsel was on the losing side below; Orrick was lead counsel at the Supreme Court. Plaintiffs do not identify the purpose of any of this puffery as to the fees motion; there is none cited..

the motion had fair use not been present, and that no case is objectively unreasonable where any defense is involved.[6] This meritless notion asks the Court to ignore that defenses exist, but their idea fails to recognize that courts do not let plaintiffs off the hook in the face of a very clear defense, as has occurred in the cases Girard cited finding not just success at the pleading stage on the merits where a work was admittedly used, but an award of fees on fair use.  *See* Moving Br. 11, 14; *compare Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1152-35 (9th Cir. 2016) (copyright holder must consider fair use as part of infringement claim).[7]

*Fourth,* Plaintiffs use an evasion tactic when addressing the undisputed fact that they claimed that the Court could not consider fair use at the pleading stage. *See* Moving Br. at 13. This time, they say that fair use is a "mixed question" of law and fact, yet they identify *no* factual disputes and *conceded* at the hearing that no discovery on any factual issue was necessary. *See id.*; *see also* ECF No. 47 at 4 n.6.  Moreover, their new argument is a distinction without a difference: as the Supreme Court recently held, the ultimate decision on fair use is for the court, not the jury. *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 23-24 (2021).

*Fifth*, even though the Court dismissed the case on a Rule 12 motion without leave to replead, they insist that they asserted "valid claims" and that the Court did not find the claims implausible or meritless. *See, e.g.*, Opp. Br. at 18, 23. But this is what dismissal on a Rule 12 motion is, and their refusal to accept that fact underscores the pattern of misrepresentation that infects Plaintiffs' entire argument. *Compare* n.6, *supra*.

---

[6] Among other off-point cases, Plaintiffs analogize to and extensively rely on (at 6, 7, 8, 12) an unreported ruling from 2004, *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 2004 WL 728878 (S.D.N.Y. Apr. 6, 2004), a case in which—unlike here—plaintiffs' suit ***withstood*** a motion for summary judgment and resulted in plaintiffs eliminating 12 of defendant's 13 defenses. Indeed, the court distinguished the situation from cases in which the party seeking fees had ***prevailed*** on a motion for summary judgment. *Id.* at *4. Girard trusts that if Plaintiffs had better authority, they would have cited it.

[7] Plaintiffs also personally say that they do not think their claim was unreasonable, and so does counsel. These self-serving affidavits are irrelevant: the question is "objective," not "subjective," unreasonableness.

*Finally*, Plaintiffs layer on their unreasonable arguments by misrepresenting fair use case law, but also the law that applies to this very motion. Using selective quoting of cases from over 20 years ago for standards (*see* Opp. Br. at 5, 12), Plaintiffs lean into tests from the Second Circuit that Plaintiffs' experienced counsel must know the Supreme Court *overturned* in *Kirtsaeng*. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988-89 (2016) (noting that "objective unreasonableness" should not be given undue weight and that objective unreasonableness looks at the party's litigation positions in addition to the claim). Plaintiffs even rely for their "attorney's fees" arguments on law pertaining to a motion for *sanctions* in a medical malpractice case, Opp. Br. at 17 (*citing Eisemann v. Greene*, 204 F.3d 393 (2d Cir. 2000)), rather than address the principles under *Kirtsaeng* and Second Circuit cases that have followed in copyright cases. *Compare* Moving Br. at 6-8. They further claim (at 17) that *both* meritless and improper motivation must be found, when as noted before (Moving Br. at 8-9), *neither* necessarily need be shown. These tactics demonstrate that Plaintiffs have no answer for their meritless claim over a use worth less than $300 even by Plaintiffs' own standards, nor their dogged persistence in litigating the claim unreasonably to the bitter end, as Plaintiffs intend to do despite the precedent against them.[8]

## B.   Plaintiffs Have Demonstrated by Their Words and Actions that They Are Improperly Motivated.

Plaintiffs' victim-shaming fails to deflect from the clear motivation here. Without citing any judgment, because there is ***none***, Plaintiffs in sore-loser fashion repeatedly slander Girard as

---

[8] Plaintiffs also misrepresent the Progress Clause of the U.S. Constitution, saying that the purpose of copyright law is to "promote the progress of the arts." Not quite: the "arts" refers to "useful arts" in patent law. U.S. Const., art. I, § 8, cl. 8 ("To promote the Progress of *Science* and *useful Arts*, by securing for limited Times to *Authors* and *Inventors* the exclusive Right to their *respective Writings* and *Discoveries*") (emphases added). Undisputedly, this is ultimately to stimulate creativity for the general public benefit. It is not about censoring writers that have a legitimate basis to report on something simply because that something might contain copyrighted material, particularly where the plaintiff has no market for the type of use as a matter of law.

an infringer (Opp. Br. at 3, 5, 6),[9] but then deflect when faced with the truth. *See id.* at 18 n.4. Because Plaintiffs have now decided to place this at issue, it is *not* irrelevant that when faced with a prior lawsuit and in the wake of motion practice, the plaintiff in the CPI case (*see* Opp. Br. at 3) produced—at the very end of discovery—agreements between the represented photographers and magazine publishers that gave the rights that the publishers gave to Girard, effectively ending the case.[10] Nor is it irrelevant that August Image admittedly misrepresented its complaint and withdrew not just "a number" of images, Opp. Br. at 3 n.6, but *143* of *151* images in another case, **with prejudice**; the remaining claim is exactly like that in the CPI case.

In a telling but very strange move, Plaintiffs excoriate counsel for arguing one of the elements—motivation—via the claim that the Plaintiffs and their counsel were motivated by money. Evidently, making arguments warrants unleashing a narrative that counsel defends "a multitude of infringers" (because Plaintiffs apparently believe that wrongly-sued defendants do not deserve representation) and engages in "irresponsible advocacy." Opp. Br. at 4. This schoolyard-style behavior has no place before this Court, and notably, Plaintiffs fail to proffer anything to show that such arguments are founded.[11] Indeed, Plaintiffs admitted that the value of the Image for editorial use (*not* fair use) was between $300 and $505 for much larger publications with much greater sets of rights, yet Plaintiffs are offended that even after the

---

[9] The relentless attacks, which mirror those made throughout the case about Mr. Girard, a highly respected writer and publisher, are relentless: "Defendants are serial infringers playing victims." "Defendants have a history of trampling on the copyrights that August syndicates[.]" Arguments made on motivation are "standard slander by a repeated infringer[.]" These claims are inappropriate, unproven, and untrue.

[10] The agreements included language like "the right to use any published Photograph, in any media now known or hereafter invented, to advertise or promote the issue of the Magazine"; "the rights to use and reuse the Photographs in connection with the marketing and promotion" of the magazine; and other similar language permitting the type of uses that are described in Girard Decl. ¶¶ 7-8 & Ex. A. *See* Lackman Reply Decl. ¶ 2.

[11] Plaintiffs' persistent characterization (at 6, 19) of Girard's counsel's clientele reveals an absence of diligence into a detailed online CV, and they identify *no* case in which any party obtained a ruling that counsel's client was an infringer. In the two adjudicated cases that counsel has had adverse to Plaintiffs' firm, Girard's counsel won both. The use of the term "troll" (at 19) appears only in quoting the courts.

extremely outsized demands previously made, Girard would not pay **four times** the highest price that they could marshal up in an arms-length deal. These are not counsel's words: the case law speaks for itself. *See* Moving Br. at 15-17; *see also McDermott v. Monday Monday, LLC*, 2018 WL 1033240, at *3 n.4 (S.D.N.Y. Feb. 22, 2018) (law firm "plays a numbers game in which it targets hundreds of defendant seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim.") (cleaned up); *Konangataa*, 207 WL 2684067, at *2 (noting "[t]here may well be justification for defendants' implication that these were strike suits, designed to extort settlements from defendants on the basis that the defense costs would exceed what plaintiff would accept in settlement"). Plaintiffs even fumble their way around their three-year delay (non-credibly citing as an excuse a case that was then equally as old, *see* Opp. Br. at nn.6, 13) to explain their lack of notice to Girard, but the facts are clear: this is how it has worked with the parties and their counsel. *Cf. BWP Media USA Inc. v. Polyvore*, 922 F.3d 42, 59 (2d Cir. 2019) (suing before asking for reasonable remedy "suggests that [plaintiff] has a business model that involves abusing the federal courts."). Exactly as described, Plaintiffs concede that their cases settle early, before they can be thrown out or issued three-figure damage awards consistent with those found when cases (with no defenses) go to trial. *See* Moving Br. at 2, 4; *cf.* Opp. Br. at 19 (Plaintiffs settle rather than face the merits).

Plaintiffs suggest that all of this was about motivation to recover a $300 license fee. Putting aside the foolishness of paying a $405 filing fee to recover $300 without any negotiation in advance, the representation is impossible: as August Image **expressly conceded** to Girard, it could not license it without permission. *See* Girard Reply Decl., Ex. A.[12]

---

[12] Despite claiming that the agency had exclusivity, Plaintiffs produced only two agreements directly between the agent and licensee. The other two were homemade *invoices* from Seliger himself. *See* ECF No. 47 at 11 (production was "lackadaisical, at best").

**C.** **Plaintiffs' Insistence that It Is Not Unreasonable to Bring and Litigate a Claim Plainly Barred by a Defense Compels a Strong Need for a Deterrent Effect.**

Plaintiffs fail to challenge the case law indicating that even in objectively reasonable cases, yet obsessively insist that Plaintiffs must bring lawsuits over fair uses or else others will make use of Schwimmer's Instagram post for free. This argument is specious: Girard has never argued that use of an image by itself to enhance a story is the same thing as reporting on the fact and meaning of a post in which the poster decided to use an image to make a point. Indeed, he describes in his moving declaration his acquisition of licenses for the former purpose. *Cf.* Opp. Br. at 9. Moreover, Plaintiffs' fears are unwarranted: as the Court generally recognized, there is no licensing market for fair use, and Plaintiffs *never* offered any evidence of either of the Plaintiffs licensing the image within the Instagram post at issue.

Inexplicably, in this context, Plaintiffs refer to the value of free speech built into Section 107 as "mudslinging and grandstanding." This only confirms that Plaintiffs do not believe, or do not want to believe, that fair use exists. Comments like these demonstrate that without some deterrent effect, these types of claims will not stop, and therefore a fee award is "crucial." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006). Indeed, Plaintiffs' overstated and speculative comments (at 15, 21, 23) about the fear that nobody will ever license or honor rights if fair uses are permitted, are the "grandstanding" here. Anyone can see that the use here was fair; Plaintiffs keep for themselves all non-fair uses, as the copyright law intended.

## II.    PLAINTIFFS FAIL TO DISPUTE THE FEE AMOUNT REQUESTED

Plaintiffs do not dispute that Defendants prevailed, counsel's rate, or that Defendants paid it. They do not dispute that the total cost incurred for all of the work done on the matter is remarkably low. Instead, Plaintiffs assert that they are far better qualified than Defendants' counsel to determine how to manage and run a case on her docket. Tossing aside her own dozen

years of experience as a law firm partner and her advanced degree in management, Plaintiffs chide counsel for not telling an associate, at a rate just slightly lower than her discounted rate, to read up on the correspondence between the parties and all of the fair use cases counsel already had recently read for an appeal she won in the Second Circuit just a few months before in a case involving use of a composited photograph. According to Plaintiffs' counsel, it would be better to spend twice the time using an associate at 2/3 the price to draft arguments highly similar to those that the partner had recently drafted and argued, and write reports to the Court about a court-ordered mediation in which only one lawyer (the partner) participated. *See* Lackman Reply Decl., ¶ 3. Plaintiffs' counsel has certainly not held back in criticizing Defendants' counsel for having the "audacity" to defend her clients, *see, e.g.*, Lackman Decl. Ex. B at 4, 5 (accusing counsel of "creating drama" and claiming it was "preposterous" to state that party should appear at mediation), but such superciliousness has never been a basis to reduce a fee request; simple math would show that it is unsound.[13]

## CONCLUSION

Equity and the principles of the Copyright Act strongly compel that the cost of the case should be borne by Plaintiffs. Indeed, there are only so many passes that a court might provide, and Plaintiffs' vicious and error-ridden opposition only underscores that a fee award would be the just result. Accordingly, as stated in its moving papers and in reply, Girard respectfully requests that the Court award attorney's fees and costs in the full amount requested, plus the fees incurred for this Motion.

---

[13] Plaintiffs indicate that counsel engaged in cite checking and basic research. Not so. Counsel reviewed the tables to make sure the paralegal's work was accurate, and polished up certain language based on flags from her paralegal, and did all of this in 0.7 hours.

Respectfully submitted,

Dated: New York, New York         MITCHELL SILBERBERG & KNUPP LLP
       May 3, 2024

By:   /s/ Eleanor M. Lackman
      Eleanor M. Lackman (eml@msk.com)
      437 Madison Avenue, 25th Floor
      New York, New York 10022
      Tel.: (212) 509-3900
      Fax: (212) 509-7239

*Attorneys for Defendants Girard*
*Entertainment & Media LLC and Keith*
*Girard*